CASE 106—ACTION TO RECOVER BALANCE OF PURCHASE MONEY ON LAND —JUNE 15, 1899.

# Fort Jefferson Improvement Co. v. Dupoyster.

### APPEAL FROM BALLARD CIRCUIT COURT.

Joe. C. Dupoyster, in his own right, and as administrator of Ben. S. Dupoyster, sued the Fort Jefferson Improvement Company to recover the balance of the purchase price of land.

JUDGMENT RESCINDING THE CONTRACT OF SALE, BUT REFUSING TO GIVE DEFENDANT A LIEN ON THE LAND FOR THE PURCHASE MONEY PAID, FROM WHICH JUDGMENT THE DEFENDANT APPEALS. REVERSED.

CHAMPERTY—CONSTRUCTION OF DEED—VESTED REMAINDER—POWER OF APPOINTMENT.

Held:  1. A deed conveying land in the adverse possession of another is not void, but voidable merely, at the instance of the parties in adverse possession; and, therefore, if the grantee buys in the adverse titles, a purchaser from him can not complain of his title.

2. A deed to B. which recites that "it is expressly agreed and understood that said second party is to deed or will said lands to the bodily heirs of J. C. Dupoyster; in other words, the title and possession of said lands is only invested in said second party during his natural lifetime, then to said heirs of J. C. Dupoyster; and second party has the discretion of allotting said lands between said heirs as he may see proper," vests in B. only a life estate, remainder to the children of J. C. D., which vests in the born child, and opens up to let in the afterborn children.

3. The discretion to B., of allotting the lands "as he may see proper," contemplates an equal division, and gives B. merely the discretion to designate the location of each child's share.

J. M. NICHOLS & SON, ATTORNEYS FOR APPELLANTS.

1. The court will find as a matter of fact from the evidence that on the 16th of March, 1859, the whole of the Todd survey was in the actual adverse possession of one Unsell, claiming under the Todd title and against Thos. Dupoyster and all the world, and therefore the conveyance by Thomas Dupoyster to B. S. Dupoyster was champertous and void.

Fort Jefferson Improvement Co. v. Dupoyster.

2. We claim that said deed was both acknowledged and recorded be-
fore it was delivered to B. S. Dupoyster, and for this reason is
void.

3. But if wrong in this, we deny that the words "bodily heirs of J.
C. Dupoyster," used in the deed, mean the children of J. C.
Dupoyster.

4. If wrong in this construction, and if it be held that the words
"bodily heirs" shall be taken to mean children; then as each
child was born it took a vested interest in all the lands em-
braced in the deed, and as J. C. Dupoyster had four children born
to him, two of whom died in infancy without issue, their father,
J. C. Dupoyster, being their next of kin, inherited one-half of said
land from them.

Champerty, Ch. 12, sec. 2, Rev. Stats.; Wait on Fraudulent
Conveyances, Secs. 412-413-416; 13 Mass., 239; 9 Dana, 385; 5
B. M., 161; 14 S. W. Rep., 680; 1 B. M., 372; 7 S. W. Rep., 629;
24 S. W. Rep., 4; 7 Bush, 355; 5 J. J. Mar., 579; 7 Dana, 36; 4
Dana, 563; 11 Bush, 518; 17 B. M., 667; 1 Marshall, 494; A. & E.
Ency. of Law, vol. 28-475; A. & E. Ency. of Law, vol. 3-86; 4
B. M., 566; sec. 6, ch. 12, Rev. Stat.

Tax not paid. 4 Met., 348.

Voluntary and Fraudulent Conveyances. 1 Metcalf, 348; 7
Bush, 442; 3 B. M., 635; Sneed, 136.

Construction of Deed. 2 Dana, 547; 18 B. M., 368; 2 Met., 331;
15 B. M., 10.

Estoppel. 87 Ky., 559; 11 Ky. Law Rep., 32; 78 Ky., 643; 14
Bush, 193; 3 Bush, 402.

Delivery of the Deed. 16 Peters (U. S.), 106; 105 Mass., 563;
3 Wall (U. S.), 636; 37 Am. Dec., 135; 14 Am. Dec., 369; 21 Am.
Dec., 350; 12 Am. Dec., 192; 6 Am. Dec., 146.

Certificate Insufficient and Recording of the Deed Invalid. 7
J. J. Mar., 120; 10 B. M., 180; 11 Bush, 34; 10 Bush, 424, 429;
13 Bush, 457; 2 Bibb, 45-317; 3 Bibb, 532; 4 J. J. Mon., 573;
Littell's Select Cases, 295-465; 55 Am. Dec., 412-13; Jackson v.
Danforth, 12 John (N. Y.), 202; Jackson v. Phipps, 12 John (N.
Y.), 421; Jackson v. Eams, 12 John (N. Y.), 418; Ten Eyck
v. Richards, 6 Cowan, 617; 5 J. J. Mar., 558; 4 Littell, 273; 14 B.
M., 62; Littell, 237; 4 Dana, 327-330; 5 Oregon, 313; 95 Ill., 267;
42 Ill., 311; 39 Ill., 413; 57 Tex., 3-7-638; 63 Tex., 584; 12 Minn.,
255; 2 Dill, 316-319; 69 Iowa, 53; 13 Bush, 457; 4 Dana, 330;
10 B. M., 180; 83 Ky., 669; 82 Ky., 475; 11 B. M., 102; 58 Am.
Rep., 289 to 296; 19 Am. Rep., 772; 20 Am. Rep., 737; 35 Am.
Rep., 166; 30 Am. Dec., 82; Robinson v. Gould, 26 Iowa; 15 S.
W. Rep., 756-1047; 24 S. W. Rep., 113; 14 S. W. Rep., 576-660;
Prentice v. Duluth Storage & For'd. Co., 58 Fed. Rep. (8th Cir.),

438; 20 Neb., 347; 20 Wis., 551; 75 Wis., 609; 2d. vol. Wash. Repl. Prop., 581; 7 Bush, 156-222; 12 Bush, 443; A. & E. Ency. of Law, 451.

ADDITIONAL BRIEF BY J. M. NICHOLS & SON FOR APPELLANTS.

"The authorities are numerous which hold that if an infant of years of discretion, having a right to an estate, permit or encourage a purchaser to buy it, the purchaser will hold it against the infant." (1 Vol. 6, Wait's Actions and Defences, pp. 683-694.)

We feel confident that the court will reverse this case on the grounds:

*First*—That the deed is champertous.

*Second*—That the appellees are estopped.

*Third*—That the acknowledging and recording before delivery or acceptance imparts no notice, as it was not entitled to be recorded.

*Fourth*—That even had it been properly delivered and accepted, yet the certificate is insufficient, as it fails to "certify the time it was lodged for record."

*Fifth*—That it fails to show that the tax was ever paid.

*Sixth*—That even if genuine, and properly recorded, the deed conveys no estate or interest in the lands to appellees.

*Seventh*, and last, but really first to be considered, we confidently submit that the overwhelming weight of the testimony in the case shows that the alleged deed of March 16, 1859, is in fact a forgery; and we ask a careful examination of Mr. Jackson's brief on this question, satisfied that such an examination will result in the finding we ask, and render unnecessary any examination of the legal propositions involved if the deed be held genuine. Vol. 6, Wait's Actions and Defences, 683-694; 3 Bush, 702; 46 Ill., 18; 4 Met., 352; 88 Ky., 515; 78 Ky., 643; 92 Ky., 244; 24 S. W. Rep., 113; Am. & Eng. Ency. of Law, vol. 7, page 118; 18 B. M., 178; 5 J. J. M., 564-569; 6 Bush, 540; 8 B. Mon., 542; 96 Ky., 401; 6 B. M., 113; 39 S. W. Rep., 706; sec. 496, Ky. Stats.; sec. 511, Ky. Stats.; sec. 513, Ky. Stats.; 78 Ky., 506; 13 Bush, 457; Tideman on Real Property, sec. 816; Elliott v. Harris, 74 Ky., sec. 3898.

THOMAS P. SHAW, ATTORNEY FOR APPELLANTS.

Appellants attack this deed upon the following grounds:

(1) That it is not genuine.

(2) That the certificate of acknowledgment endorsed on the deed purporting to have been made by J. Corbett, clerk, is a forgery.

Fort Jefferson Improvement Co. v. Dupoyster.

(3) That Thomas Dupoyster, the grantor, was not in possession of the premises described in the deed on the 16th day of March, 1859, the day of its date, but they were occupied and held adversely to him by others.

(4) That said deed was never recorded in Ballard county until a few days prior to the filing of the answer and cross-bill bringing it into the case; and that appellants had no actual notice of its existence at the time of their purchase, nor prior to the time it was set up in this case.

(5) That said deed, if executed, acknowledged and recorded at all, was so executed, acknowledged and recorded before it was delivered to the grantee, and the acknowledgment and recording thereof are, therefore, invalid and impart no notice to any one.

(6) That the certificate thereon is insufficient in this, that the clerk fails to "*certify the time when the instrument was lodged in his office for record;*" nor is payment of the tax on the deed endorsed on the deed.

(7) That appellants are estopped from claiming any interest in said lands as against appellees.

Ratcliff, &c., v. Marrs, 87 Ky., 26; 3 Washburn on Real Property, 439; 13 Am. & Eng. Ency. of Law, 798 and note; Cornwell, et al., v. Orton, 126 Mo., 355, and cases therein cited; Heck v. Fisher, 78 Ky., 743; Holloway v. R. R., 92 Ky., 244; Bull v. Sevier, 88 Ky., 515.

W. G. BULLITT, ATTORNEY FOR APPELLEES, J. B. DUPOYSTER AND MRS. DALVA EDWARDS AND HUSBAND.

1. The third section of the champerty act provides that the parties to every such sale or conveyance shall forfeit their right, title or claim to the Commonwealth, which forfeiture shall inure to the benefit of the person in possession without office found; such sale, therefore, can not be void; if it were void, it could have no effect whatever.

2. The deed in question being only voidable, the sixth section of said champerty statute authorizing those in possession to buy in outstanding claims, as aptly applied to the claimants under the Thomas Dupoyster's deed as it did to the claimants under the military surveys.

3. No patents issued by the Commonwealth under its great seal can be held to be void, unless the statute under which it may have issued declares it to be void if issued under circumstances therein stated; therefore, the patent issued to Langden, under which Thomas Dupoyster claimed, can not be held to be void.

Fort Jefferson Improvement Co. v. Dupoyster.

4. Although part of the land so conveyed may have been adversely held and occupied at the time of the conveyance, it can not be reasonably contended that the conveyance was void as to the part not so adversely held at the time.

Blac. Com., vol. 2, pp. 195 to 199; Pomeroy on Real Estate, pp. 2, 3, 4; 79 Ky., 373, Harlan v. Howard; 8 B. M., 20, Winston v. Gwathmey.; 9 Dana, 233, Thruston v. Masterson; 6 Dana, 110, Cook v. Totton; 3 B. M., 404, Webb & Harris v. Holmes, *et al.;* 80 Ky., 672, Davis v. Hardin; Perry on Trusts, sec. 258, vol. 1.

D. G. PARK, ATTORNEY FOR APPELLEES.

1. Appellees contend and the court below so construed it, that by the terms of the deed, Ben. S. Dupoyster took a life estate with contingent remainder to the bodily heirs of J. C. Dupoyster as a class with power of allottment among them by the life tenant by deed or will.   18 B. M., 365 to 381, Williamson v. Williamson; 1 Met., 670, 676 and 677, Thompson v. Vance; 89 Ky., 22, Howell v. Ackerman; 95 Ky., 79 to 83, Lewis, &c., v. Cit. Nat. Bank; 14 B. Mon., 570, Turman v. White; 91 Ky., 54 to 56 Bodine v. Arthur.

2. Contingent remainder, claimed by appellant, can not be sustained.

3. Champerty—Limitation.   The appellants are in no attitude to rely upon either the statutes of champerty, or of limitations.   Having purchased from and come into possession through the life tenant, Ben. S. Dupoyster, they can no more deny the validity of his title, or allege his possession to be adverse to appellees, as remainder, than Ben. S. Dupoyster himself could have denied such title, or alleged that his possession was adverse as against them.   2 J. J. Marshall, 470, Kirk v. Nichols' Heirs; 88 Ky., 420, Butler v. McMillan, &c.; 2 Herman on Estoppel and *Res Adjudicata*, p. 1014; Board v. Board, L. R., 9, Q. B., 48; Bigelow on Estoppel (5th ed.), 555; Newell on Ejectments, p. 602, sec. 15; pages 447-8, sec. 11; 19 Am. Rep., 323; Martindale on Conveyance (2d ed.), sec. 24; 85 Ky., 503, Luen v. Wilson; 2 Herman on Estoppel, p. 787, sec. 652.

L. P. PALMER, ATTORNEY FOR LANGDON HEIRS.

1. Mere lapse of time where there is no adverse possession and no title in defendant, will not prevent recovery by plaintiff.   The good faith required by the statutes in the creation or acquisition of color of title, is the freedom from design to defraud the person having the better title.

2. When entry is not made under claim; where the persons are mere squatters, the law regards possession as held under the super-

ior title, and to inure to its benefit. Am. & Eng. Ency., note p. 47; 7 B. Mon., 238; 2 A. K. Marshall, 19; 5 Dana, 341; 3 Met., 38.

3. Courts of equity allow circumstances to govern their decision in each case. 13 A. & E. Ency., 674-726; 3 Littell, 177; 7 B. Mon., 162; 1 J. J. M., 445.

4. Heirs not being summoned is ground for reversal. 7 T. B. M., 215; 1 A. K. M., 174; 6 J. J. M., 336; 2 Dana, 271; 4 T. B. M., 252, 384.

5. The intention must be to resist the title of the disseizee, or he is a mere trespasser. 9 B. M., 253.

6. The statute of limitations does not bar an equity in case of fraud. Kerr on Frauds, page 309, and notes.

7. The objection of time is removed so long as a man remains without any fault of his own, in ignorance of his rights and injuries, or is under legal disabilities, or so long as the dominion of undue influence, which vitiates the transaction, is in full force. Kerr on Fraud, page 311.

8. Fraud will vitiate any act, no matter how solemn, and the chancellor will grant relief. 5 Dana, 196; 5 B. M., 594; 11 Peters U. S. Rep., 980; 11 Ky. Rep., 23; Walker's Am. Law, pages 368-9.

OPINION OF THE COURT BY CHIEF JUSTICE HAZELRIGG—REVERSING.

It is the contention of appellee that, claiming under paper title from one Langdon and others, Thomas Dupoyster and his son Joe C., settled in 1848 upon the tract of land in controversy, containing some 3,600 acres, in Ballard and Carlisle counties; that they occupied a small portion of the land that was cleared, made some little improvements, cut timber, and cleared a few more acres of land, and asserted their ownership to the entire tract. Appellee further contends that on March 16, 1859,, Thomas Dupoyster, who had three children living at that time (Joe C., Ben S., and Thomas Dupoyster), by deed duly signed, acknowledged, and recorded in the proper office, conveyed this land to his son Ben S. for life, and then to the children of Joe C. Dupoyster, under conditions to be considered presently. In September, 1890, Joe C. Dupoyster, his wife, and his brother Ben. S. Dupoyster, claiming

to own this land, conveyed the same to appellant, the Ft. Jefferson Improvement Company, for the consideration of $50,000 part to be paid in stock, $10,000 to be paid in cash when deed was made, and $25,000 six months thereafter.

The company had paid something over $8,000 on the trade, when Joe C. Dupoyster, in his own right and as the administrator of his brother Ben S., who had died in March, 1891, filed in the Ballard Circuit Court, December, 1891, the present action to recover of the appellant company the balance of the purchase money. To this action, Harkless, Trimble, and others, claiming liens on the land, were made parties; but there is no appeal from any judgment on their behalf, and it is not necessary to discuss their interests. To this action the Ft. Jefferson Improvement Company set up several defenses, but we will discuss the only material one, in which they charged fraud upon the part of their vendors in making the sale. It is charged that liens of Harkless and others were on the lands when sold, and that since the purchase the company has discovered that Joe C. had theretofore sold a large portion of the land to one McCombs, all of which Joe C. Dupoyster had fraudulently concealed from the company, representing that the latter was getting a clear title. The company therefore asked for rescission of the contract of sale, and for a lien on the land to secure to it the money already paid.

An amended answer of the company charged that in November, 1883, Ben S. Dupoyster had conveyed the entire tract to Joe B., son of Joe C. Dupoyster, and assigned this as additional ground for rescission. It appears that this deed of 1883 conveys about 1,000 acres of the 3,600 acres in controversy, and that, though it was of record, it was not indexed. In 1893 Joe B. Dupoyster, in-

fant, and Dalva D. Edwards, the only living children of Joe C. Dupoyster, came into this suit by cross action, and set up the deed of March 16, 1859, from old man Thomas Dupoyster to his son Ben S., alleging that by the terms of the deed a life estate in the land in controversy was given to Ben. S. Dupoyster, and at his death the remainder vested in the then living children of Joe C. Dupoyster, and that they were the only living children of Joe C. Dupoyster at the time of the death of Ben Dupoyster; and they prayed for judgment awarding them the complete title and possession of the whole tract of land in controversy. The company made defense to this cross action, denying that Thomas Dupoyster executed the deed of 1859 to Ben Dupoyster, and alleging that the latter never accepted it; denied that the deed was ever acknowledged or recorded until 1893, while this suit was pending. Indeed, they attacked the deed and certificate as a forgery, and assailed it as not genuine in many other respects. After a great volume of proof was taken on the issues joined, the court made an order rescinding the contract of sale, and awarding judgment to the company against Joe C. Dupoyster in his own right, and against him as administrator of Ben S. Dupoyster, for the sum of about $10,000, purchase money the company had paid, but declined to adjudge the company a lien on the land in controversy to secure payment of judgment. The court further adjudged the whole tract of land to Joe B. Dupoyster and Dalva D. Edwards, as prayed for in their cross action, and from this judgment the Ft. Jefferson Improvement Company has appealed.

The first and most important question that presents itself to us for decision is as to the genuineness of the deed of March 16, 1859. The old gentleman, Thomas Dupoys-

ter, at the time of the alleged execution of this deed, had three sons; and we can not discern what reasonable motive he could have had in deeding all this land to one child for life, with remainder to the unborn children of one of his other sons, making no provision for two of his children. This alleged original deed is before us for examination. The writing in the body of the deed is singularly similar to the certificate written on the back of the deed. Joe C. Dupoyster admits that he wrote the body of the deed, but it is claimed that, the clerk, J. Corbett, wrote the certificate. Comparing the body of the deed of March 16, 1859, with the Lauderdale deeds, we are not entirely satisfied that the same person wrote them. At least, it hardly seems possible that they could have been written by the same man at the times they are dated, and they are dated only a little over a year apart. Joe C. Dupoyster says that he wrote them all. If this is true, the evidence of Chowning and Asthorpe would lead us to believe that the deed dated 1859 was written many years after the deeds to Lauderdale. These witnesses say that this 1859 deed is written in a more mature hand. Indeed, the testimony of Asthorpe, Ort, L. W. Corbett, Keith, Chowning, and an examination of the several original admittedly genuine handwritings of Corbett, and the fact that the alleged deed was recorded, if at all, out of its regular place, conduce strongly to support the contention that the deed of 1859 is not genuine. Yet to dispel this conclusion there is the testimony of Hogancamp, Powell, Overly, Stovall, Shelton Thomas, Strouse, and others, tending strongly to establish its genuineness. Judge White testifies that he saw of record a deed from Thomas Dupoyster to his son Ben S., but does not remember the contents. Mr. Bugg does not remember that the deed filed here is the

original deed, but a long time prior to this suit Joe C. Dupoyster stated to him that Thomas Dupoyster had deeded the same land to his son Ben, and offered it to Bugg for examination; but the latter failed to examine same, and can not testify that the deed filed here is the original deed. The deed of Ben S. to his nephew Joe B., of 1893, refers to the fact that Thomas Dupoyster had deeded these lands to his son Ben. The county records having been destroyed by fire we can not give any light on the subject. Taking the evidence as a whole, and lending some weight to the finding of the chancellor below, we conclude that the deed filed here is the original and genuine deed of Thomas Dupoyster to his son Ben.

It is insisted by counsel for appellant that, even if this deed of 1859 is genuine, it must be declared void under the champerty statute. This question is thoroughly and ably discussed by counsel, and we have given it much consideration. It may well be conceded, as contended by counsel, that there was a superior title that of the Langdons and others, and that at the time Thomas Dupoyster settled upon a portion of the land in controversy there were several parties in actual possession of the greater portion of this land, claiming it under the superior title. We think the evidence clearly establishes the fact that these parties were holding a great portion of this land under the superior title adversely to Thomas Dupoyster at the time he made the deed of March 16, 1859, to his son Ben. Taking this view of the case, counsel contends that the deed is therefore absolutely void, as being within the champerty statute, and respectable authority is cited sustaining counsel's position; but, construing the statute as a whole, and in view of the decision of this court

in the case of Luen v. Wilson, 85 Ky., 503 (3 S. W., 911), we are of opinion that the deed is not void, but only voidable at the instance of the parties in adverse possession. The evidence clearly shows that Ben S. Dupoyster and his brother Joe, claiming under this deed of 1859, purchased all these adverse claims for Ben, and took the actual possession of the whole tract, and were so holding it under this deed at the time it was sold to the appellants. If A. should sell to B. lands at the time in the adverse possession of others, and B., claiming under his deed, should purchase in the adverse title, and would thereafter sell it to C., we do not understand upon what grounds C. could complain of his title, so far as to have the deed from A. to B. declared void. A different rule would apply if the parties in adverse possession were complaining. And so, in this case, as Ben Dupoyster had acquired the fee to this land under the deed of 1859, we do not think that appellants can be heard to complain, the outstanding title having been theretofore bought in by Ben.

Having held this deed of 1859 to be genuine, and not void as within the champerty statutes, we now find it necessary to construe this writing, in order to determine who are the owners of the land in controversy. The deed reads as follows: "This indenture, made and entered into by and between Thos. Dupoyster, party of the first part, and Ben S. Dupoyster, party of the second part, all of Ballard county, Kentucky, this, the 16th day of March, 1859, to-wit, said party of the first part, for the following consideration to-wit that said second party has certain lands in Mississippi county, Mo., which the second party is to convey to the first party, or such parties as the first party may direct to be conveyed to, and also one dollar in hand paid by second party to first party, the

receipt whereof is hereby acknowledged, said first party does bargain, sell, and convey unto second party the following described lands, to-wit:   All of section three, township five, range four west, not in Mississippi river; also, all of section ten in same township and range, not in said river; also, all section of section two and section one in same township and range; also all of sections eleven and twelve in same township and range, not covered by the Wm. Clark and Walter Scott surveys; also, all of section seven and the south half of section six in township five, range three west; also, the south half of section thirty-four and the southwest quarter of section thirty-five, township six, range four west. All of said lands are on the waters of Mayfield creek, on the Mississippi river, in Ballard county, of Kentucky.

It is expressly agreed and understood that said second party is to deed or will said lands to the bodily heirs of J. C. Dupoyster,—in other words, the title and possession of said lands is only invested in said second party during his natural lifetime, then to said heirs of J. C. Dupoyster; and second party has the discretion of allotting said lands between said heirs as he may see proper; said second party to have and to hold said lands during his natural lifetime, and said heirs, and their heirs and assigns, together with all the appurtenances thereunto belonging, forever, with covenant of general warranty." The lower court construed this deed to mean that Ben S. Dupoyster took a life estate, with a contingent remainder to the bodily heirs of J. C. Dupoyster, with power of appointment in the life tenant.   We think it quite plain that the grantor intended that Ben Dupoyster should take only a life estate in the land conveyed.   We are also of the opinion that the word "heirs" and "bodily heirs," as used

in this deed, mean "children," and the lower court prop- erly so held; but we are of the opinion that the court erred in deciding that the intention of the grantor was to invest the children of J. C. Dupoyster with a mere con- tingent remainder. The intention, we think, was to vest a life estate in Ben with remainder to the children of Joe C.; his first born taking the entire remainder, which, however, opened up to let in the afterborn children.

No power of appointment proper is created by this deed in the life tenant. At any rate, the power was an extreme- ly limited one, and was directed to be exercised for the benefit of the bodily heirs of Joe C.; and, to make the meaning plainer, the grantor adds: "In other words, the title and possession of said lands is only vested in said second party during his natural lifetime, then to the heirs of J. C. Dupoyster." Then follows a provision merely giv- ing to Ben the "discretion" of allotting, of dividing out or partitioning, "as he may see proper," these lands among the children of Joe C. The language does not suggest an unequal allotment or partition, nor create the power of cutting off or lessening the right or interest of any one of these heirs or children. We must suppose the allotment or division was intended to be an equal one, but that the discretion was vested in Ben to designate the location of each child's interest or share. And this designation or allotment he might make by will or deed. It follows that the children of J. C., as they were born, took vested remainders. It appears from the record that during the married life of J. C. Dupoyster there has been born to him four children, two of whom are dead. Hence, under our construction of this deed, the interest of the dead children passed by the law of descent to their lawful heir or heirs. If it should appear that the child of Joe

B. Dupoyster has received by the deed of 1883 more than his proportion of the land in controversy, as fixed under our construction of the deed of 1859, then that deed should be held void to that extent.

At the time of the conveyance of the land in controversy by J. C. Dupoyster and Ben S. Dupoyster to the appellant company, it is quite certain that the Dupoysters knew of the existence of this deed of 1859, and knew that they could not convey to the company the fee-simple title,—all of which, from the evidence, was unknown to the company. This fact, in connection with other evidence here tending to show fraud and misrepresentation upon the part of the Dupoysters, justified the lower court in ordering a re-scission of the contract. On whatever of the land J. C. may be the owner by inheritance from his dead children there will be a lien in favor of appellant for the purchase money wrongfully received by him.

A brief has been filed on behalf of the Langdon heirs, but there are no pleadings filed or issues made in this action from which we can intelligently discuss their interests, if any. The judgment is reversed, and cause remanded for proceedings consistent herewith.

Petition for re-hearing filed by appellant and overruled.