BRYAN v. DUPOYSTER et al.

(Circuit Court of Appeals, Sixth Circuit. May 14, 1904.)

No. 1,272.

1. MORTGAGE—VALIDITY—LIFE TENANT.

An instrument in the nature of a mortgage executed by a trustee *held* to create no lien on land which could be enforced after the death of the cestui que trust, who had himself created the trust, on the ground that the deed from an ancestor, by which he obtained title, conveyed to him only a life estate, as had been adjudged by the highest court of the state.

Appeal from the Circuit Court of the United States for the Western District of Kentucky.

The following is the opinion of the Circuit Court, by Evans, District Judge, filed June 23, 1903;

Since the filing of the court's opinion upon the demurrer to the bill of complaint, the defendant Joseph C. Dupoyster has answered, elaborately setting forth his defenses, and, the testimony having been taken, the case is now before the court for final adjudication. Manifestly the status is radically different from what it was when the court, in the opinion referred to, stated the grounds upon which it did not sustain the demurrer to the bill. Towards the close of that opinion the court endeavored to clearly and specifically give those reasons. It has now become necessary to analyze the agreement sued on, as well as the evidence. By that agreement, made in September, 1890, but never acknowledged or recorded, "Jos. C. Dupoyster, acting as the trustee for Ben S. Dupoyster," and not otherwise, stipulated that upon the contingencies stated therein the writing should "have the force and effect of a lien

against the lands and improvements embraced in the said Fort Jefferson Improvement tracts" for the payment of the debt described therein. If J. C. Dupoyster had any authority to act in the premises, it came through a paper dated August 20, 1887, to be referred to more fully hereafter. The agreement sued on does not specifically describe the estate (whether fee simple or less) of Ben S. Dupoyster in the land, but it goes without saying that neither that person, nor any trustee or representative acting in his stead, could mortgage a greater estate therein than was owned by Ben S. Dupoyster. We must therefore, at the outset, ascertain what that estate was, and now proceed to do so.

It appears from one of the exhibits filed with the bill of complaint, and also from the testimony, that in 1859 Thomas Dupoyster conveyed the land described in the bill to Ben S. Dupoyster for life, with remainder to the heirs of the defendant Joseph C. Dupoyster, and it also appears that on the 15th day of June, 1889, the Court of Appeals of Kentucky, in an opinion delivered in the case of Ft. Jefferson Improvement Company v. Dupoyster and others, a copy of which is filed in the record, and which is unofficially reported in 51 S. W. 810, 21 Ky. Law Rep. 515, 48 L. R. A. 537, distinctly held, first, that that deed was the deed of the grantor therein; second, that, properly construed, it conveyed the land to Ben S. Dupoyster for life, with remainder to the children of Jos. C. Dupoyster; and, third, that the remainder thus created for the said children vested in the oldest child to begin with, and opened up in succession as other children were subsequently born. There was a clear and specific adjudication both as to the validity of the deed of 1859, and as to what is its proper construction. This court is by no means at liberty either to question or disregard that adjudication. The matter was properly before the Court of Appeals, and the case was one concerning real estate situated in Kentucky. A conveyance of the land by Dupoyster to the Ft. Jefferson Improvement Company had been set aside by the lower court. The judgment of that court as to all of these matters was affirmed, and, while the judgment appealed from was on some points reversed, such reversal was in respect to other phases of the case clearly indicated in the opinion referred to, and the cause was remanded for further proceedings in accordance with that opinion. The reversal, as plainly appears from the opinion, in no wise affected the adjudication to which I have referred. It therefore appears certain that Ben S. Dupoyster had only an estate for life in the land.

A deed of trust was made on August 20, 1887, by Ben S. Dupoyster to his brother, the defendant Joseph C. Dupoyster, and, under what was supposed to be the authority thereby conferred, the latter, as trustee, executed the paper called a "mortgage," and which is sought to be enforced by this suit. That instrument is dated September 17, 1890. A copy of it embodied in the bill of complaint does not show accurately how it was signed (indeed, the manner of signing it, as shown by that copy, is quite incorrect), but the original paper, filed as an exhibit with the complainants' deposition, does show that it was signed, "B. S. Dupoyster by J. C. Dupoyster, Trustee," and not, as copied in the bill, "B. S. Dupoyster and J. C. Dupoyster, Trustee." It does not appear ever to have been acknowledged or recorded, nor does the original, which is filed, show that Ben S. Dupoyster ever signed, acknowledged, or was a party to it in the direct sense. J. C. Dupoyster executed the paper only as trustee, the language used being "Jos. C. Dupoyster, acting as trustee for Ben S. Dupoyster, both of Ballard county, Ky., party of the first part." In no sense did he act in his individual capacity in the transaction, nor otherwise than in his representative capacity, presumably under the authority supposed to be conferred by the deed of trust above mentioned. It is insisted that under section 2356 of the Kentucky Statutes the mortgage was void, because Ben S. Dupoyster did not join therein as the statute requires, and that it was ineffective because the deed of trust did not authorize the making of a mortgage at all. I do not find it necessary to pass upon either of these objections, although the authority under the deed of trust to make a mortgage at all may be greatly doubted, and I have always supposed that the proper construction of the section referred to, and which in substantially the same form had long been on the statute books of the state, was only to forbid the enforcement of a mortgage, or a deed of trust in the nature of a mortgage, by strict fore-

closure, or otherwise than by a suit in equity, unless the mortgagor, or the grantor in a deed of trust in the nature of a mortgage, expressly joined in a sale of the premises. I think that construction would accurately express the limitations meant to be fixed by the section.

If we assume that the paper sued on, though never acknowledged or recorded, is a valid mortgage on Ben S. Dupoyster's interest in the land, as between him and the complainant, we shall assume as much as it by any possibility authorizes by its language. Ben S. Dupoyster died March 5, 1891. If he had only a life estate in the mortgaged premises, that estate manifestly terminated on that date. Under the construction put by the Court of Appeals upon the deed of Thomas Dupoyster made in 1859, Ben S. Dupoyster clearly had a life estate only in the land, unless he by some possibility inherited some other interest from some one or more of Joseph C. Dupoyster's children to whom the remainder belonged. Joseph C. Dupoyster had only four children, to wit, Leona D. Dupoyster, who was born September, 1861, and died, without having been married and without issue, April, 1883; Ruelva E. Dupoyster, who was born in 1872, and died in August, 1883, without having been married and without issue; Dalva Dupoyster, born September, 1866, now the wife of J. P. Edwards; and Joseph B. Dupoyster, born in October, 1873. Joseph C. Dupoyster is the defendant, and still lives. So do two of his children, namely, Joseph B. Dupoyster and Mrs. Edwards. These being the facts, it follows that under no statute law of the state of Kentucky in force at any time since the oldest child of Joseph C. Dupoyster was born, nor any in force since the deed of 1859 was made, nor especially any in force in 1883, when the two children died, could Ben S. Dupoyster previously to his death have been an heir of either of J. C. Dupoyster's children. It is therefore altogether clear that all the interest in the land which Ben S. Dupoyster ever owned was a life estate under the deed of 1859, and that that interest expired with him on March 5, 1891; thus extinguishing every interest in the land to which a mortgage by Ben S. Dupoyster, or his trustee on his behalf, could extend.

It is urged that J. C. Dupoyster represented, and that Ben S. Dupoyster also represented, to the complainant, when the transactions occurred, that one or both of them owned the fee-simple title to the land, and that the destruction of the clerk's office aided them and was availed of by them in imposing upon the complainant; but, as against certain owners of the land, namely, Joseph C. Dupoyster's wife and his two children, Joseph B. Dupoyster and Mrs. Edwards, who are not pretended to have been present nor to have aided in the accomplishment of the deceit, and who are not parties to this suit, these propositions, even if true, can have no weight. It will not do to hold that owners of land lose the benefit of the notice legally resulting from duly recording their deeds in cases where the clerk's office shall happen to be destroyed without their fault, nor can the title to real estate be taken from legitimate owners by the false representations of strangers to strangers. The complainant might well have had a cause of action at law for the deceit if Joseph C. Dupoyster misled him by fraudulent misrepresentations, but such right would probably be limited to that sort of action, and cannot be so expanded as to involve the right to make the land of innocent third parties, or even that of Joseph C. Dupoyster himself, directly and in kind liable for such misrepresentations. In short, assuming the paper sued on to be a valid mortgage upon the interest of Ben S. Dupoyster in the land, there was nothing for it to operate upon when this suit was brought on the 9th day of May, 1902, nor, indeed, at any time since March 5, 1891, when he died.

It is quite true, as the learned counsel for the complainant insist, that the rights of the children of J. C. Dupoyster who are not parties to this action cannot be affected by the court's decree herein, and it is equally true that adverse claimants of land need not, under certain circumstances, be made parties to a bill to enforce a mortgage thereon, although it may be observed that, under numerous states of case, all parties in interest, and especially those in possession, should be included, but these matters do not reach the difficulties the complainant encounters. His own exhibits and the answer and the evidence demonstrate that his mortgagor, notwithstanding the failure to accurately describe in the mortgage his estate, and whether it was the fee-simple

or less, had only a life estate in the mortgaged premises. The record shows that this estate expired in 1891, quite 11 years before this suit was instituted. There was no claim for a receiver for the rents and profits of the estate, or for their sequestration to the mortgagee's use, prior to the death of Ben S. Dupoyster in March, 1891, and the complainant's bill is adjusted only to the relief prayed for therein, to wit, a sale of the land. Ben S. Dupoyster having died, his interest was gone before this suit was brought, and, as J. C. Dupoyster certainly did not mortgage his individual interest in the land, the mortgage sued on did not cover that interest. So that, when the record demonstrates that when this suit was brought there was no interest in the land described in the bill which could be subjected to the mortgage sought to be enforced, the question necessarily arises, should the chancellor do the vain and useless thing of attempting under his decree to sell an interest or estate which obviously does not exist? Manifestly such a course would be absurd, and for that reason wholly inappropriate in a judicial proceeding. The court should not shut its eyes to what is apparent upon the record, and which makes it obviously impossible for the court to pass any title to anything to any purchaser under a decree herein.

It may be, and probably is, true that Joseph C. Dupoyster inherited some interest in the land through one or both of his dead children, but I am clearly of opinion that there are no apt words in the paper assumed to be a mortgage to show that any individual interest of J. C. Dupoyster was intended to be embraced therein; but, even if the contrary be the case, the defendant the Ft. Jefferson Improvement Company might, and under the opinion of the Court of Appeals probably would, have a lien of a superior nature upon that interest in the land for the purchase money adjudged by the state court to be refunded to that company when the deed to it was set aside, and, if so, this cause would not be ripe for a decree on such a phase of the case until there is a further hearing and showing as to what, if anything, has been done by the state court in that behalf. The record does not accurately advise of what was done after the return of the case to the Ballard circuit court, but comity would require this further information before we act; else we might run counter to the judgment of that court in a cause shown by the record to have been pending there long before this suit was begun. However, I by no means hold that under any possible view of the law or the evidence the complainant has any lien, by virtue of his mortgage or otherwise, upon any interest in the land which J. C. Dupoyster may have inherited from his dead children, which, as his wife appears to be living, could not exceed one undivided fourth thereof, viz., one-half of one-fourth and one-half of another one-fourth therein.

As at present advised, I should certainly hold that Joseph C. Dupoyster's individual interest, if any, in the land did not pass by virtue of the mortgage, nor by virtue of any matters of estoppel growing out of anything that occurred, particularly as the provisions of the Kentucky statute of frauds forbid the enforcement of any agreement for a sale or mortgage of real estate unless such agreement is in writing signed by the party to be charged. In view, however, of the contingency of an appeal from the judgment of this court, if the complainant shall now manifest to the court a desire to take further steps upon one single phase of the case alone, to wit, whether the Ballard circuit court has by its judgment directed or caused to be sold any interest in the land which may have been inherited by Jos. C. Dupoyster from his children who are dead to satisfy any lien to the Ft. Jefferson Improvement Company, adjudged, in the suit heretofore referred to, to have existed in favor of that company to secure the refunding of certain purchase money, he can have the opportunity to do so. But it should not be inferred by this that I shall hold that such interest of Jos. C. Dupoyster in the land is in any wise covered by the agreement which for the purposes of this case we have assumed to be a mortgage. I shall hold precisely the contrary if the question comes before me. Perhaps further steps are unnecessary, and, if not taken, then, upon the considerations stated, the bill should be dismissed, with costs in favor of Joseph C. Dupoyster. His codefendant is a mere formal party.

Another matter possibly ought not altogether to escape the attention of the court, though it was not argued. It is this: The debt of $5,000 described in the so-called mortgage was not originally the debt of Ben S. Dupoyster, but

was the debt of the Ft. Jefferson Improvement Company. If Ben S. Dupoyster was bound for its payment at all, he was probably so bound only as surety or guarantor, though the nature of any obligation upon him to pay this debt of another nowhere appears outside of the mortgage, and, from this point of view, it may well be doubted, under section 482, Ky. St., first, whether J. C. Dupoyster had any authority to bind Ben S. Dupoyster for the debt at all without authority in writing from the latter; second, whether the deed of trust of August 20, 1887, authorized J. C. Dupoyster, as trustee, without the express consent of Ben S. Dupoyster, either to make Ben S. a guarantor of that debt, or to give a mortgage on the land of the latter to secure such a surety debt; and, third, whether the claim is not now barred either by time (seven years), under section 2551, Ky. St., or by laches, as a stale claim, under the principles announced in the cases of Hayward v. National Bank, 96 U. S. 617, 24 L. Ed. 855; Badger v. Badger, 2 Wall. 87, 17 L. Ed. 836; and in the numerous cases cited in Rose's Notes on them. This last result would not be avoided upon the facts stated in the bill of complaint as a reason for not sooner bringing this action, and, under the authorities, these results might be enforced in proper cases in equity, although there was no plea relying upon the statute of limitations, or where the state statutes did not apply. However, while suggesting the very pertinent possibilities arising upon these considerations, I do not put my judgment upon them. I prefer to put the decision of the case upon the grounds stated, viz., first, that as Ben S. Dupoyster's life estate expired, in 1891, there was nothing left for his mortgage to operate upon, even assuming that the debt had been validly guarantied and that the mortgage upon his interest in the land was authorized; and, second, that, as Jos. C. Dupoyster did not mortgage his individual interest in the land at all, the complainant had no enforceable claim against that interest. If these two reasons are well founded, the subject is exhausted, and further inquiry is unnecessary.

## Exceptions.

Previous to the hearing, no formal exceptions to any of the testimony were filed, although certain vague objections were noted on the depositions while they were being taken. However, those objections in probably every instance were too general to be noticed, or to call for any judgment thereon. But under the order of submission it may be fair to say that some objections were made which should be disposed of:

(1) The court is of opinion that none of the exceptions made on behalf of the defendant should be sustained, and all of them are separately overruled.

(2) The complainant objects to the reading as evidence of certain letters from him to the defendant Joseph C. Dupoyster, filed by the latter as a part of his deposition, and consecutively numbered from 1 to 15, inclusive. These letters seem to have no legitimate bearing upon any issue in the case, and the complainant's objections to their being read or considered as testimony are sustained.

(3) The only other exceptions insisted upon in the order of submission which are not too general and vague to be noticed are those which relate to the copy of certain parts of the record from the state court marked "Exhibit X" in J. C. Dupoyster's deposition, and marked "April 2, 1903, Wm. Henderson," in William Henderson's deposition. The evident object of this testimony is to show that the complainant voluntarily became a party to the suit in the state court, and thereafter made a motion therein for the appointment of a receiver. Doubtless the defendant attaches importance to these facts as justifying the conclusion that the complainant, being a party, is bound by the judgment in the state court, and by the construction put by that court upon the deed of 1859, but, whether this part of the record is read or not, there is enough of the record otherwise in evidence without objection, including the opinion of the Court of Appeals, to show all that is necessary for the purpose of deciding this cause. Besides, the deed of 1859 is copied in the record presented by the complainant, and, even in the absence of the opinion of the Court of Appeals, this court would construe the deed the same way. The objection that the copy covers only a part of the record is not tenable, because it is open to the defendant to put in the parts he thinks will prove what he wants to prove, and to the complainant to put in other parts if he thinks other parts of the

record will neutralize the effect of what the defendant has put in. This would especially be true where the object is limited within such narrow bounds as make it manifestly unnecessary to produce an entire record to prove a single fact which may be as well established by a part of it. The points arising on the exceptions were but little, if at all, argued, but it is assumed that the other objections to this Exhibit X are based upon the provisions of section 905, Rev. St. U. S. [U. S. Comp. St. 1901, p. 677]. The copy offered is certified by the clerk of the state court, and, if the copy were authenticated by the seal of the court, it is doubtful whether the objection that his official character and that his attestation was in due form of law are not certified by the judge of the state court would be maintainable. The contrary was expressly held by Mr. Justice McLean in Mewster v. Spalding, 6 McLean, 24, 17 Fed. Cas. 242 (No. 9,513), and by Judge Deady in Bennett v. Bennett, 1 Deady, 299, 3 Fed. Cas. 212 (No. 1,318). These rulings were based upon the ground that, inasmuch as the federal courts are presumed to know and to take notice of the laws of all the states, they must be understood as knowing that the clerk's attestation is or is not in due form of law, and that the clerk's official character, etc., should be regarded as established if his certificate is fortified or authenticated by the seal of the court for which he is the clerk. As the clerk did not, under the seal of his court, authenticate the exhibit referred to, the exception of the complainant to the reading of that part of the testimony is sustained. Such exceptions as this, however, should always be taken in advance of the trial, so as to afford an opportunity to correct the omission, and the court on this account has been in much doubt on this point, and, if the proposition was considered as vital, would even now afford an opportunity to supply the omission.

Counsel will prepare a judgment accordingly.

Bloomfield & Crice and F. H. Sullivan, for appellant.

Bagby & Martin, for appellee Dupoyster.

Before LURTON, SEVERENS, and RICHARDS, Circuit Judges.

RICHARDS, Circuit Judge. This was a bill filed May 8, 1902, by the complainant (appellant) against the defendants (appellees) to foreclose what was claimed to be a mortgage on a tract of land containing about 3,500 acres, known as the "Ft. Jefferson Tract," in Ballard county, Ky. The defendant the Ft. Jefferson Improvement Company, although served, did not appear to the bill. Joseph C. Dupoyster filed an answer. To this the complainant filed a general replication. The case was heard upon the pleadings and proof, and a decree rendered dismissing the bill. The complainant below has appealed.

The case turns upon a construction of three conveyances. The complainant relies upon the following instrument, executed and delivered to him, as constituting a mortgage:

"This agreement made and entered into this 17th day of September, 1890, by and between Jos. C. Dupoyster, acting as trustee for Ben S. Dupoyster, both of Ballard County, Ky., party of the first part, and William S. Bryan, of St. Louis, Mo., party of the second part, witnesseth: That whereas the said party of the first part has sold to the Fort Jefferson Improvement Company, an incorporation, a certain tract of land known as the Fort Jefferson tract, situated in Ballard County, Ky., and supposed to contain thirty-five hundred acres, more or less, and whereas said party of the second part is interested in said tract to the value of five thousand dollars ($5,000.00) in cash paid to the said party of the first part, and whereas the said party of the second part has agreed to receive in lieu of the said five thousand dollars ($5,000) fifty thousand (50,000) shares of stock in the Fort Jefferson Improvement Company, and whereas, there are certain deferred payments to be made to the party of the first part by the said Fort Jefferson Improvement Company, now, therefore, if the said company or its legal representatives

should fail or refuse to meet and pay said deferred payments in the amounts and at the times agreed upon, then this agreement and instrument of writing shall have the force and effect of a lien against the lands and improvements embraced in the said Fort Jefferson tracts, for the purpose of securing to the said William S. Bryan, his heirs and assigns, the said five thousand dollars ($5,000) herein named."

Conceding that this instrument, although never acknowledged, was in equity a mortgage upon the tract, it is clear, upon a careful reading, that it was executed, not by Joseph C. Dupoyster acting for himself, but by Joseph C. Dupoyster acting solely as trustee for Ben S. Dupoyster. It so states. Its operation therefore was limited to the interest which Ben S. held in the Ft. Jefferson tract on September 17, 1890. What interest did he hold in it at that time?

Joseph C. Dupoyster was created trustee for his brother, Ben S., by the latter's deed of August 20, 1887, which conveyed the Ft. Jefferson tract and other lands to the former upon a trust defined as follows:

"Said second party is to manage, sell and make deeds, rent, or lease any or all of the above lands according to his best judgment. And my just debts is to be paid out of the proceeds of the first sales, and if the second party should survive the first party, then the proceeds of such sales, rents, etc., to be paid to his second party's son, Joseph B. Dupoyster, after paying for a suitable monument at the tomb of said first party. The second party is to retain a liberal fee for his services in managing the above estate."

It is to be observed that this conveyance provides that, if Joseph C. Dupoyster should survive Ben S., then the proceeds of the sales, rents, etc., shall be paid to Joseph C.'s son, Joseph B., after paying for a suitable monument to Ben S. It purports, therefore, to pass to the trustee the control and disposition of the lands during the lifetime of Ben S., and seemingly recognizes Joseph C.'s son, Joseph B., as the owner of an interest in the lands after the death of Ben S.

The question which naturally suggests itself, in view of the peculiar phraseology of this conveyance, is, what interest did Ben S. have in the lands at the time he made it? And this brings us to a consideration of the terms of the deed of these lands of March 16, 1859, executed by Thomas Dupoyster, the father of Ben S. and Joseph C. Dupoyster, to Ben S. Dupoyster. This deed from Thomas Dupoyster, the party of the first part, to Ben S., the party of the second part, was upon the following express condition:

"It is expressly agreed and understood that said second party is to deed or will said lands to the bodily heirs of J. C. Dupoyster; in other words, the title and possession of said lands is only invested in said second party during his natural lifetime, then to said heirs of J. C. Dupoyster, and second party has the discretion of allotting said lands between said heirs as he may see proper, said second party."

"To have and to hold said lands during his natural lifetime and said heirs and their heirs and assigns together with all the appurtenances thereunto belonging forever with covenant of general warranty."

In an action brought by Joseph C. Dupoyster, in his own right and as administrator of Ben S., against the Ft. Jefferson Improvement Company, to recover the balance of the purchase price of the Ft. Jefferson tract, the Supreme Court of Kentucky held that this deed was genuine, and that it vested in Ben S. only a life estate, with remainder to the children of Joseph C., which vested in the first-born child, and opened up to

let in the after-born children.    21 Ky. Law Rep. 515, 51 S. W. 810, 48 L. R. A. 537.

Ben S. Dupoyster, therefore, at the time he made his brother trustee, and at the time his brother, as trustee, executed the alleged mortgage to the complainant, had and held only a life estate in the Ft. Jefferson tract.   It was for this reason the circuit court of Ballard county, in the suit to which we have referred, set aside the sale of the Ft. Jefferson tract to the Ft. Jefferson Improvement Company, and rendered a judgment against Joseph C., individually and as administrator for Ben S., for $10,000; this being the amount of the payments made by the improvement company on the land.   But the court declined to make this judgment a lien on the land.   It thus appears that Ben S. Dupoyster never had more than a life estate in the Ft. Jefferson tract, and this estate terminated on March 5, 1891, on which day he died.   From that time on there was no interest existing in this land upon which the mortgage could operate.

This is enough to dispose of the case.   But it is contended that Joseph C. and Ben S. falsely represented that Ben S. owned the tract in fee simple and that Joseph C. was authorized to mortgage it.   If this were established, it might warrant a recovery in an action based on fraud, but it would create no lien upon the land such as is sought to be asserted in this suit.

Again, it is submitted that since Joseph C. had four children, two of whom died unmarried and without issue, he holds, as heir of these deceased children, a certain interest, said to amount to an undivided one-fourth, in the land.   But if we concede this was shown, still the situation is not changed, for Joseph C. acted only as trustee for Ben S. in executing the alleged mortgage.   He did not assume to mortgage any interest of his own.

The judgment of the court below is affirmed.