CASE 78.—SUIT BETWEEN NANNIE COOK AND CLARENCE HART AND OTHERS FOR THE CONSTRUCTION OF THE WILL OF JOHN JOHNSON. SR., DECEASED.—March 19, 1909.

## Cook v. Hart, &c.

Appeal from Nelson Circuit Court.

SAMUEL E. JONES AND WM. E. RUSSELL, Successive Judges.

From the judgment Nannie Cook appeals.—Reversed.

1. Wills—Construction—Intention of Testator.—In construing a will, the court must determine the intention of the testator from a consideration of the entire will, and the intention, when ascertained, will be carried into effect, though the technical meaning of words is disregarded, and though words must be supplied.

2. Wills—Estates Devised—"Heirs."—Testator devised real estate to the children of a deceased daughter, to a son, and to his daughter C. gave his daughter N. a specified sum, gave $10,000 in bonds to the son in trust for his daughter B. to pay to her the income for life and at her death the principal

Cook v. Hart, &c.

to be divided among his "heirs" in accordance to the number of children which each might then have, division to be per stirpes, and gave the residue to his son and two daughters, C. and N., and the children of the deceased daughter, Held, that the word "heirs" meant testator's children, and that the trust fund on the death of B. must be divided among the stocks, giving to each stock in proportion to the number of children of that stock; each of the three children of the testator being a stock, and the children of the deceased daughter being another stock.

L. A. FAUREST for appellant.

## QUESTION DISCUSSED AND AUTHORITIES CITED.

Under the sixth clause of the will of John Johnson, the fund therein disposed of should be divided according to the number of children that each child of the testator (other than Bettie Johnson) had living at the death of said Bettie Johnson. 21 Cyc., 419, 426; Edmonds v. Edmonds, 31 Ky. Law Rep., 396; Tucker v. Tucker, 78 Ky., 503; Mitchell v. Simpson, 88 Ky., 125; Hughes v. Clark, 16 Ky. Law Rep., 41: Gordon's Adm'r v. C., N. O. & T .P. R. R. Co., 89 Ky. 50.

JOHN A. FULTON for appellee.

A. W. HALSTEAD of counsel

## CONSTRUCTION OF CLAUSE OF WILL AS FOLLOWS, VIZ:

"I devise to my son John, in trust for my daughter, Bettie, ten (10) one thousand dollar Logan County bonds, the net income to be paid her every six months as long as she lives and at her death the principal is to divided among my heirs in accordance to the number of children which they may have, said devision to be per stirpes."

The legatee for life of this fund is now dead and the question is now on the distributing of this fund among the "heirs" of the testator.

The word "heirs" embraces the grand children of testator living at the making of the will and whose parent (child of testator) was dead at said time, as well as children of testator, and entitles such of them as have children living at death of legatee for life to share in this fund on same terms with the children of testator, i. e., "in accordance to the number of children which each may then have."

2. A clear gift is not defeated or cut down by later expressions less clear and certain. Wells, &c., v. Newton, &c., 4 Bush, 158; Cromie's Heirs v. Louisville Orphan's Home Society, 3 Bush, 365; Black's Legal Dictionary; Jarman on Wills, 5th Ed. Vol. 2, page 6J; Jarman on Wills, 5th Ed., Vol. 1, page480; Schouler on Wills, 2nd Ed., Secs. 54, 474; Rood on Wills, Secs. 449, 494.

OPINION OF THE COURT BY CHIEF JUSTICE SETTLE—Reversing.

This appeal involves a construction of the will of John Johnson, Sr., who died in Nelson county in May, 1891. The will is in words and figures as follows:

"I, John Johnson, Sr., of the county of Nelson and State of Kentucky, do make and publish this my last will and testament hereby revoking any former will which I may have heretofore made:

"(1)  I desire my just debts and funeral expenses paid.

"(2)  I devise to the children of my dead daughter, Mary Hart, to be equally divided among them, their farm above Bardstown on which their father now resides; and in the distribution of my estate I value said farm at twelve thousand dollars. I make no charge whatever against them for rent or for use of said farm, nor for taxes which I have paid on it. In fact I want this valuation of the farm to cover all advancements to them and their mother. I also give them three thousand dollars.

"(3)  I devise to my son John, all of my real estate south of the Beechfork and in the settlement of my estate I value said land at fifteen thousand dollars, and this valuation is to cover any and all advancements made to him, whether in the way of use of the place, taxes thereon, or otherwise.

"(4)  I devise to my daughter, Cassie, my home place, containing about 600 or 700 acres to be hers as

long as she lives, and at her death to go to her children. I also give all the homestead and kitchen furniture, provisions, live stock, farming implements, gears, buggy and harness. Also all the meat, corn, hay and oats on hand at my death, and $5,000.00 in money. All of which I value at $15,000.

·"(5)   I devise to my daughter, Nannie Cook, $15,-·000.

"(6)   I devise to my son, John, in trust for my daughter Bettie, ten (10) $10,000.00 Logan county bonds, the net income to be paid her every six months, as long as she lives, and at her death the principal to be divided among my heirs in accordance to the number of children which each may then have; said division to be 'per stirpes.' I also give to my daughter, Bettie, the right to occupy a room in the house which I hereby devise to Cassie as long as she (Bettie) may live or remain unmarried.

"(7)   I give to Octavia Barnes $400.00, provided she stays with and helps Cassie with her housework for four years after my death.

"(8)   The real estate which I devise to my son, John, is to be his only during his life and at his death to go to his children.

·"(9)   I also give my son, John, the stock in the Louisville & Nashville Railroad Company.

"(10)   I hereby constitute and appoint my son, John, the executor of this will and ask the court to allow him to qualify without giving security. As executor he is to have no commissions in any part of my estate, except upon that part used in paying my debts and funeral expenses and costs of administration, and that disposed of under the twelfth clause of this will. I appoint my friend, Ben Johnson, as the legal adviser of my executor.

"(11) In case any of my devisees should institute legal proceedings to break or annul this will then such as do shall have no part of my estate.

"(12) All of the remainder of my estate I want equally divided among John Johnson, Nannie Cook and Cassie Barnes, and the children of Mary Hart. The Hart children to have one-fourth, and John, Cassie and Nannie, each to have one-fourth. Bettie is to have no more of my estate than the income from the Logan county bonds and a comfortable room in my house as hereinbefore set out."

At the time of his death the testator owned real and personal estate amounting in value to $120,000. Four of his children were then living, viz., John Johnson, Jr., Nannie Cook, Cassie Barnes, and Bettie Johnson, the last an unmarried daughter. Another daughter, Mary Hart, died before the testator, leaving surviving her three children, Clarence Hart, Al. J. Hart, and John Hart, all adults. It will be observed that the will of the testator, with the exception of $10,000 in Logan county bonds bequeathed by the sixth clause to his daughter Bettie Johnson, devised all the residue of his estate to his three other children and the sons of his deceased daughter, Mary Hart, one-fourth to each of the children, and one-fourth to the three sons of Mrs. Hart jointly. It will further be observed that the $10,000 in Logan county bonds disposed of by the sixth clause of the will were bequeathed by that clause to John Johnson, Jr., in trust for Bettie Johnson; the net income thereof to be paid the cestui que trust every six months "as long as she lives and at her death the principal to be divided among my heirs in accordance to the number of children which each may then have; said division to be per stirpes."

Bettie Johnson died April 27, 1908, and shortly thereafter the appellant, Nannie Cook, filed in an action which had previously been brought in the Nelson circuit court by the executor to settle the testator's estate and was still on the docket, a supplemental answer and cross-peition setting up the death of Bettie Johnson and averring that at the time of her death she (Nannie Cook) had 12 children, her sister, Cassie Barnes 5 children, and her brother, John Johnson, Jr., 4 children, all of whom were living, and that the 3 sons of her deceased sister, Mary Hart, were still living, making altogether 24 grandchildren of the testator. The pleading in question contained a prayer for the distribution of the $10,000, the income of which Bettie Johnson had received down to the time of her death, in the proportion of 12-24 to the appellant Nannie Cook, 5-24 to Cassie Barnes, 4-24 to John Johnson, and 1-24 each of the three sons of Mary Hart, deceased. At the succeeding term of the court, Clarence Hart and A. J. Hart filed a joint answer to the cross-petition of the appellant, Cook, in which they claimed to be "heirs" of the testator in the meaning of the sixth clause of the latter's will, and alleged that at the time of Bettie Johnson's death Clarence Hart had 10 children, A. J. Hart 2 children, and their brother, John Hart, had no children. The answer, while admitting that Mrs. Cook had 12 children, Mrs. Barnes 5, and John Johnson 4, denied the right of the parents to demand a distribution of the fund in question on the basis proposed in the cross-petition, and averred that at the time of the death of Bettie Johnson there were living 33 children of the "heirs" of the testator, and that the fund left by Bettie Johnson should be distributed as follows: 12-33 to Mrs. Cook; 5-33 to Mrs. Barnes; 4-33 to John John-

son; 10-33 to Clarence Hart; 2-33 to A. J. Hart; and to John Hart nothing. The special judge by whom the case was tried in the court below construed the will according to the contention of the appellees Clarence and A. J. Hart, and entered judgment distributing the fund in controversy as asked by them. Nannie Cook, being dissatisfied with the judgment prosecutes this appeal.

The language of the sixth clause of the will very clearly shows it was the intention of the testator that the remainder in the trust fund, the income of which his daughter Bettie had enjoyed until her death, should be distributed to certain persons in proportion to the number of children each might have at the time of Bettie's death. The difficulty is as to the identity of the beneficiaries. It is urged in behalf of appellees that the word "heirs" is a technical term meaning the persons to whom the estate would go in case of intestacy, which it is claimed would include them with the children of the testator, and therefore entitle them to take, as to this fund, under the sixth clause of the will as do the testator's own children; that is, in proportion to the number of children each has. While the word "heirs" is generally given the meaning attributed to it by appellees in this case, it its sometimes used in the sense of children. In construing a will the matter of first importance is to arrive at the intention of the testator, and, when ascertained, the intention must be carried into effect; even though the technical meaning of the words must be disregarded in order to do so. In deed, as held by this court in Edmonds' Ex'r v. Edmonds' Devisees, 102 S. W., 311, 31 Ky. Law Rep., 396, courts will sometimes supply words to carry into effect the manifest purpose of the testator.

The whole context must be considered, and the intent arrived at from a consideration of the entire will, and not from the technical meaning of a single word found in the will. The rule stated is expressed in 21 Cyc. 426, as follows: " 'Heirs' is generally construed as meaning children, where the context so requires, where it is necessary that the term should be so construed in order to carry out the clear intent of the instrument." It will also be found that this rule has often been recognized by this court. Tucker v. Tucker, 78 Ky., 503; Mitchell v. Simpson, 88 Ky., 125, 10 S. W., 372; Hughes v. Clark, 26 S. W., 187, 16 Ky. Law Rep., 41. To construe the word "heirs," in the will under consideration as meaning the testator's children, would seem to carry out the intention of the testator as manifested by all other parts of his will. In disposing of the bulk and residue of his estate, he provided for the three children of his deceased daughter, Mrs. Hart, just as he would have provided for the mother had she been living. So her three children were, together, given the bulk of the estate, what each of the testator's living children, except Bettie, received. Nowhere in the will did the testator indicate that these grandchildren or any of them, should have any greater rights than their mother would have had if alive, or than the other children were given.

Does the testator, in disposing of the $10,000 fund by the sixth clause of the will, direct such a distribution of it as manifested any change of his purpose with respect to the sons of Mrs. Hart, as clearly manifested in all other parts of the will? We think not. It is true the sixth clause introduced a new method of distribution as to the $10,000 fund, viz, that it should be distributed to his children, according to the num-

ber of children each might have; but its language indicates no change of the testator's intention, as expressed in all other parts of the will, that the three sons of Mrs. Hart should together take of that fund what their mother, as the parent of the three children, would have been entitled to receive of the fund had she been living. The testator knew when the will was executed that his daughter, Mary Hart, was then dead, so, for the purpose of showing that he did not intend the number of children her children might have should be considered in distributing the fund mentioned in the sixth clause, he therein directed that the division should be "per stirpes." In other words, it was intended by the testator that the fund remaining at the death of his daughter Bettie should be divided among the stocks, giving to each stock in proportion to the number of children there were of that stock. Thus Nannie Cook was one stock, and had 12 children; Cassie Barnes was another stock, and had 5 children; John Johnson was another stock, and had 3 children. If such was not the basis of distribution in the mind of the testator the words "said division to be per stirpes" would be utterly meaningless. This construction would carry out the manifest purpose of the testator to give the children of Mary Hart what the mother would have taken if living; but the construction contended for by appellees and adopted by the circuit court would not only render nugatory the words "said division to be per stirpes," but would give two of the testator's grandchildren an advantage over their brother who has no children, and allow them more of the estate than their mother could have taken under the will had she lived. We do not believe the language of the will authorizes the conclusion that the testator thus intended to unduly favor one stock;

but that his intention, as shown by the entire will, was to so dispose of his property that all of his children and the children of his deceased child should participate in his bounty in the following proportion: 12-24 to Nannie Cook; 5-24 to Cassie Barnes; 4-24 to John Johnson; 3-24 to the Harts—that is, 1-24 to each of the Harts.

Wherefore the judgment is reversed, and cause remanded, with direction to the circuit court to set aside the judgment appealed from and enter in lieu thereof another conforming to this opinion.