By the Court

Jenkins, J.,
delivering the opinion.
Whilst this case was pending in the Superior Court of Lee county, on appeal from the Court of Ordinary, by consent of parties it was referred to the arbitrament of the Honorable Richard *115 H. Clark, Judge of the Superior Court, with full power to hear the case in vacation, and determine all questions of law and of fact arising in it, but with a reservation to the unsuccessful party of the right of appeal from his decision, which was to stand as the judgment of the Court, to this Court. It was further provided in the consent that the appeal, if taken, should bring before this Court, entire, the merits of the case. The grounds of caveat do not appear in the record, but the questions made in the argument, which was very fairly conducted, sufficiently indicate them. I state these in the order which I propose to consider them, as follows: 1st. Was the will, according to the evidence, signed as required by the statute, (29 Charles II., of force in Georgia,) or rather has the signing been proved according to the true intent and meaning of the statute? 2d. Was the attestation in conformity with the statute? 3d. Had the testator testamentary capacity ? It appears that the testator had, several years before, whilst a widower with one child, made a will. Having subsequently married, that fact, by the laws of Georgia, worked a revocation. Some time after his second marriage, the testator had a severe illness, which reduced him to a state of extreme debility, which resulted in his death. On the last morning of his life his scrivener, David A. Vason, was sent for, who repaired to him immediately, with the revoked will, which had remained in his custody, and after a brief conversation with testator, wrote on a blank leaf of it, an instrument which purported to be a codicil, and which was intended to express the then intention of testator respecting the disposition of his property. The questions to be considered relate to the time and circumstances of the execution of this codicil, all conceding that unless it can be established as a testamentaiy paper, James H. Ragan died intestate. The facts in relation to the signing, as proved by one of the subscribing witnesses and two other persons present, were, that when the paper was read to and approved by him, he attempted to rise, for the purpose of signing it, but failed in the effort from weakness. It was then suggested to him that he might authorize some one present to sign his name for him, and he said, addressing Vason, the scrivener, “do you do so.” Vason immediately subscribed the paper with *116 testator’s name, and told him he had done so. Upon this evidence the Court below held that the proof of signing by the testator did not meet the requirement of the statute; his opinion being that although the testator might delegate to another authority to sign for him, that delegation of authority must be proved by the attesting witnesses, no others being competent.
1st. We are not prepared, to affirm this opinion. It might, perhaps, be well enough to require evidence that the authority to sign was given in the presence of the subscribing witnesses? but it would be going very far to say' they are the only competent witnesses to prove the fact, and that they must all concur in it. In many cases, where such authority is given and acted upon, it may very well happen that some of the subscribing witnesses would remember it and others not. Such seems to be the fact in this case. One of the subscribing witnesses testifies to the delegation of the authority; the other two do not remember it. Two others present, however, testify to it positively, and all the evidence on this subject clearly establishes to our satisfaction both the fact of authority given, and that it was done in presence of the subscribing witnesses. The interval between the reading of the codicil, as writtén, to the testator, and the signing by the witnesses was very short; in that interval, according to the evidence, the authority was given. Each of the subscribing witnesses testifies to things occurring, both before and after that, and as neither is proven to have left the room during that short interval, the presumption is, that the authority was given in presence of them all, and that two of them have forgotten it. Since, however, in the view we take of this case, our judgment may be placed on other grounds, we decide nothing on this point. It would seem, however, that the evidence as to signing is adverse to the establishment of the codicil as offered for probate. After the formal execution and attestation of the codicil, a doubt seems to have arisen whether or not it expressed his wishes in two respects, and it was determined to question him further. The result was, that the codicil as executed expressed his wishes and intentions in neither of the two points, which were both material. The intelligent and faithful scrivener deemed it necessary to reform the codicil. This was done by erasure accom *117 plishing one important change, and an interlineation effecting another still important and quite independent of the other. The instrument thus altered was again read and approved by the testator, and a memorandum of the alterations, reciting that they were “ made to carry out the explained wishes of the testator as made after it (the codicil) was signed on the same day ” was written below and signed by the subscribing witnesses. But the codicil as reformed does not appear to have been signed, either by the testator himself or by any other person for him. So far then as regards the testamentary dispositions introduced denovo by these changes, there was no signature at all. These circumstances may also be found to have an important bearing upon another part of the case.
2d. The next question arising is, whether or not the evidence of attestation satisfies the requirements of the statute? It was made by three credible witnesses, and in the corporeal presence of the testator. The doubt is, whether or not he was mentally present, or in other words, cognizant of the attestation. There can scarcely be said to be any conflict in the evidence as to the facts showing his condition, though there is some contrariety of opinion deduced by the witnesses from those facts. All agree that he was greatly debilitated, and when not disturbed lay in a stupor; wholly insensible to what passed immediately around his bed, his ejms being closed; that from this state he could be aroused by effort, when he would open his eyes, usually recognize his acquaintances seen by him, and answer questions asked intelligently, but that there was at every instant a tendency to relapse into this stupor, attended with a gradual closing of the eyes. There is no evidence of a disposition to continue conversation, or to prolong attention to persons or to subjects, or to thought, but the contrary. When those who aroused him ceased conversation stupor instantly resumed its sway. It was a barrier to his cognizance of what was transpiring in his corporeal presence, capable of removal, but always immediately recurring when the means used to remove it were withdrawn. This being the testator’s established status, it was incumbent on the propounders to prove that the barrier of his cognizance of the act was removed when the attesting witnesses were making their *118 subscriptions. The proposition that the testator must be mentally as well as bodily present at the attestation, will scarcely be denied. The authorities to this point are concurrent: 2 Bouvier’s Institutes, 449; Wright vs. Price, Douglass, 241; 4 Kent’s Com., 516; 2 Greenleaf on Evidence, 678. What is the evidence on this point? After Mr. "Vason had told deceased he would sign the paper for deceased, he replied, “ Well.” This being done the witnesses proceeded to sign. "Vason called out the name of each witness clearly before he signed it, to call testator’s attention to it, but the response, “ well,” above quoted, was the latest evidence of attention on his part; 'he took no notice of the calling of their names. There is no evidence that he attended to it, none that his eyes continued open, (the usual indication that the stupor was resumed) whilst the attestation was in progress. The strong presumption is, that he had relapsed into insensibility before it had been half completed. All that passed only shows that the scrivener endeavored to keep his attention aroused. There is no evidence that the attempt was successful. Under the circumstances, we repeat, the onus wTas upon the propounder to prove it.
3d. This prevailing stupor, which seems to have rested so heavily upon the testator as to raise a presumption that he was not cognizant of the attestation of the will, demands serious attention in the discussion of testamentary capacity, to which we now come. It is well established that a less degree of mental force than is necessary to the skillful and profitable management of property, and the general conduct of business affairs, will suffice for the making of a will. But the testator must be capable of bringing in mental review, with proximate accuracy ^ the property subject to his testamentary disposition, as well as his family relations, and of comprehending the claims and obligations naturally suggested by such review. He must have, to some extent, the power of concentrating thought and controlling the operations of his mind. Otherwise ideas cannot be connected, and without this there can be no conception of a dispository scheme. True, it may be said that in this, as in many other cases, there is a strong probability that this whole operation had been performed whilst the testator was in health, and *119 that nothing more was requisite than the ability to communicate prearranged details. But the history of this case clearly illustrates the danger of adopting this hypothesis. The deceased was an intelligent and worthy man, and had,' undoubtedly, a fixed purpose to die testate. He had, years before, made a will. He had, months before, been informed that a subsequent marriage operated in law as a revocation of that will, yet neither in health nor in the earlier stages of a serious illness, had he a second time come up to the execution of that purpose. What transpired in the last interview with his scrivener, which resulted in this testamentary effort, shows conclusively that upon two points at least, (and very important ones) he either had not reached previously a satisfactory conclusion, or had forgotten it. Upon these points he first gives one direction, in accordance with which the codicil is prepared and carried through the forms of execution. Upon being subsequently aroused, at the suggestion of a bystander, and having his attention called to them, he uses an expression, as to one, indicating embarrassment and irresolution, and ends by giving directions upon both exactly opposite to the first, which necessitated the changes made. It is said that such changes are often made within a few minutes, by men in full health, and in the undoubted possession of all their faculties, when about to make their wills. 'Very true, but in such cases the evidence precludes the idea of a want of mental capacity, but establishes the contrary, and raises the presumption that the change of purpose resulted from a vigorous exercise of that capacity. But the condition in which we find this testator will scarcely justify such a reason in his case. Our object in this connection is to show that he either had not predetermined what he was then directing, or that he had forgotten his predetermination.
Again, supposing a testamentary scheme fully adjusted when he was in full health, it must be conceded that the proper action of the faculty of memory was necessary to communicate it to the scrivener, and to just criticism of his draft when read. The concurrent testimony of witnesses, of the continuous depression exerted upon him by the stupor, renders it extremely improbable that by an act of volition he could bring his memory *120 into effective action. Even iu the best physical and mental condition that faculty does not act well under the interruption of questions or of continuing discourse. We are informed that invariably, so sotfn as conversation ceased, the decease relapsed into stupor. There was then no moment of time in which the facts testified to, transpired, favorable to the exercise of the faculty of memory. The three subscribing witnesses agree in the opinion that the deceased had not mind enough to make a will. One of these was the physician in charge of the case, another was a consulting physician long acquainted with deceased, the third was also an acquaintance of long standing, and a clergyman. Two other physicians present at the time, concur in this opinion. The facts developed impress our minds with a belief that his powers of thought, of memory and of volition, were too much in subjection to heavy stupor, the immediate precursor of death, to leave him testamentary capacity.
There is a difficulty in setting up this will, which, it seems to us^ cannot be gotten over. We have already said that it cannot be established as propounded, because it contains provisions not in it when signed by his direction, that, for instance, which gives to his wife absolutely, the property which she brought into the coverture. Shall it then be admitted to probate as it was when signed, and before the attempted alterations ? We think not; because what transpired immediately afterwards shows that in the prior instructions given to the scrivener, and which were promptly written out and read to him, he had failed to express his wishes regarding the property brought to him by his wife, or else all the while talking at random.' This evidence connects itself closely with the question of testamentary capacity. It indicates that in the first effort at testamentary disposition he did not recognize the relation he bore to that property as a marital acquisition, nor the relation between it and his wife, nor the peculiar claim regarding it, which these circumstances gave her. When his attention was called to it, and it was pressed upon his consideration, he promptly recognized it, but too late for incorporation in his will as signed. Who shall say there are no other claims resulting from family and property relations recognized by him when in the full possession of his faculties, but entirely *121 forgotten, steeped as they were in stupor. We view this one instance, casually developed, in two aspects: first, as conclusive evidence that the codicil as signed, (in which state alone it could be admitted to probate) does not express his will and intention respecting a provision for his wife; secondly, as a forcible indication that his waning intellect had reached the stage of testamentary incapacity. The case of Hall vs. Hall, (18 Georgia, 40,) is relied upon as controlling authority on that question. A careful comparison of the cases will bring to light material differences. They resemble each other in these particulars, there were two common grounds of caveat, want of testamentary capacity, and that the testator, though corporeally present, was mentally absent from the attestation; in each case the testator was in a state of great exhaustion, and proneness to mental stupor. But as regards the first ground of caveat, capacity, the evidence establishes a marked difference. Hall, at first, when questioned, spoke only of the disposition of his estate, which, unexplained, would seem to argue forgetfulness of his personalty. But the principal subscribing witness, who was the attending physician and scrivener, “ doubted whether in his palmiest days he knew the meaning of real estate.” When this was explained to him, and he was asked whether he meant to give his wife half of all his estate, he answered, “ yes, that is what I mean.” From this expression of intention he never deviated. Still, owing to his apparent indifference to the whole subject, and his relapsing after each answer into stupor, had the evidence gone no further, I would have been strongly inclined, had the question come before me, to pronounce against his capacity. But he was prompted to perform this act at the suggestion of a sister, one of the legatees present all the while, who, had he died intestate, would not have inherited from him. She, in the absence of his wife, made two efforts to procure from him a disposition more favorable to herself, and less so to the wife. Both of these were resisted with no other support than his own will at hand, and he adhered inflexibly to his purpose, giving for his refusal to comply a reason both sensible and just. His wife, he said, had helped him to make the property’and save it, and “I want her to-have one-half.”
*122 Here is evidence of memory, reason, comprehension of family and property relations and strong volition, all combined. In the case at bar such evidence is wanting. Ragan knew the difference between real and personal estate, but his instructions were that his wife should have a half interest in his property, including what she brought to him, only during life or widowhood, and so the will was written and executed. Afterwards, when his attention was called to the limitation of her interest to her widowhood, he abandoned that, showing either lack of understanding or of independent volition. Again, when reminded of the property he had acquired by his marriage with her, he said he wished her to have that absolutely, proving when he dictated the will, which (if any) must go to probate, the claims growing out of the relations to family and property were not in his mind. And this can be imputed to nothing but its shadowed condition.
Regarding the other point, the testator’s cognizance of the fact of attestation, two remarks may be made upon the ruling in Hall’s case, which distinguishes it from this: First, that question was really not in the record, and we might dispose of the ruling by saying that it was obiter diotum. But, secondly, it was exclusively a question of fact, and had been submitted to and passed upon by a jury. They found that he was mentally and corporeally present, and, with such a finding, under proper direction from the bench, and sustained, on a motion for a new trial, by the presiding Judge, this Court never interferes, unless it be in flagrant violation of the evidence. In this case jury trial was dispensed with, and this was an original question before the Judge in the Court below, who with fuller evidence on the point than was adduced in Hall’s case, reached the conclusion that, in contemplation of the statute, the attestation was not in the testator’s presence, and on this point wo concur with him.
Let the judgment be affirmed.