### SPICER et al. v. CONNOR et al.

(Supreme Court, Appellate Division, Fourth Department. December 29, 1911.)

1. WILLS (§ 506*)—BEQUEST—BENEFICIARIES—"HEIRS."

The word "heirs" in a will making a gift to "the heirs which my daughter * * * now has and which she may hereafter have" means her children.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 1090–1099; Dec. Dig. § 506.*

For other definitions, see Words and Phrases, vol. 4, pp. 3241–3265; vol. 8, pp. 7677–7678.]

2. WILLS (§ 634*)—ESTATES CREATED—VESTED REMAINDER.

The remainder under a will making a gift to the children of testator's daughter which she then had or might thereafter have, with a provision that the rents and profits should be appropriated to the use and benefit of the daughter during her life, vested on the death of testator.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 1488–1510; Dec. Dig. § 634.*]

3. PARTITION (§ 63*)—REGULARITY AND VALIDITY—EVIDENCE.

Evidence in a suit for partition held to show that partition actions 50 and 40 years ago were regular and binding, notwithstanding certain papers therein cannot be found.

[Ed. Note.—For other cases, see Partition, Cent. Dig. § 185; Dec. Dig. § 63.*]

Appeal from Special Term, Steuben County.

Action by Frederick H. Spicer and another, executors of Charlotte Pamelia Spicer, deceased, against Cora Stryker Connor and others. From a judgment on a decision after a trial at a special equity term, plaintiff and certain defendants appeal. Affirmed.

The judgment is in favor of the defendants John J. Pepper, Hattie B. Pepper, and Rufus Baldwin, dismissing the complaint upon its merits, with

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

$258.57 costs. The judgment also declares that the plaintiff and all the other defendants not above named have no interest in the lands mentioned in the amended complaint, but, on the contrary, adjudges that the defendant John J. Pepper is the owner in fee simple of the lands mentioned in the amended complaint subject to the inchoate dower interest of his wife, Hattie B. Pepper, and subject to the interest of Rufus Baldwin, the defendant, as mortgagee. The action was commenced on the 12th day of February, 1907, by Charlotte Pamelia Spicer to obtain the partition of a lot in the village of Addison, Steuben county. After the rendition of the judgment, the plaintiff died, and the present plaintiffs, her executors, were substituted.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, KRUSE, and ROBSON, JJ.

Friend H. Miller (James O. Sebring, Charles M. Marvin, and Thomas Shannon, on the brief), for appellants.

Delmar M. Darrin (William Carter, on the brief), for respondents.

McLENNAN, P. J. While the tract of land involved in this particular action is not a large one, yet it appears that a multitude of actions are now pending to which the appellants and the owners of other lands are parties, the ultimate disposition of which will affect the title to some 4,000 acres of land in Steuben county. The respondent John J. Pepper is the owner through various mesne conveyances of the lot described in the complaint, and which was a part of the lands owned by William Wombough at the time of his death. The respondent Hattie B. Pepper has an inchoate dower interest in the premises, and Rufus Baldwin holds a mortgage on it. All the other defendants answered, consenting to the relief demanded by the complaint; so that the respondents take one side of the controversy and the plaintiff, and all the rest of the defendants, being the appellants, take the other side of the controversy, and for convenience I will refer to them as respondents and appellants respectively.

On the 21st day of May, 1853, William Wombough died at Addison, N. Y., owning large tracts of land in New York and Pennsylvania, including the lands mentioned in the complaint. He left a last will and testament, dated February 19, 1853, which was duly probated by the Steuben county surrogate on the 16th day of June, 1853, as a will devising and bequeathing all of his real and personal property. The will was of some length, and the material portions of it are as follows:

"Item 5. I give and bequeath to my children, Pamelia, now Pamelia Baldwin, Henry Wombough, Ann Eliza, now Ann Eliza Bennett, Sarah Louisa, now Sarah Louisa Murdock, Julia Jane, now Julia Jane Farnham, Martha Mahala, now Martha Mahala Brewster, and Addison Wombough, seven equal undivided shares of all the residue of my real estate and chattels real, wheresoever situated which real estate is hereby considered as being composed of eight equal parts or shares, common and undivided.

"Item 6. I give and bequeath to the heirs which my daughter, Charlotte Maria Stryker, now has and which she may hereafter have, one equal eighth part or share of all the real estate and chattels real, last aforesaid mentioned, but the rents and profits thereof shall be appropriated to the use and benefit of my said daughter, Charlotte Maria Stryker, during her natural life.

"Item 7. I give and bequeath to my children, Pamelia Baldwin, Henry Wombough, Ann Eliza Bennett, Sarah Louisa Murdock, Julia Jane Farnham,

Martha Mahala Brewster and Addison Wombough, and to the heirs of my daughter, Charlotte Maria Stryker, after paying my funeral charges and debts, all my personal property not hereby otherwise disposed of, and all my bills, moneys, bonds, notes, judgments, dues, stocks and demands belonging to me, to be divided in eight equal parts, or shares, the heirs of my said daughter, Charlotte Maria Stryker, to have an equal eighth part thereof, to be divided equally among them, her said heirs, but the use and benefit thereof to go to my daughter, Charlotte Maria Stryker, during her natural life.

"Item 8. I hereby release to my children who have used and occupied my lands and tenements all claims or demands for the use and occupation thereof and for any further use and occupation after this date and I will direct that whenever a division of my real estate shall be made that the lands separately and now occupied by my children or either of them shall be allotted to them, reference being had to an equal division, quantity and quality being considered, and each one shall have the benefit of all improvements made by him or her in the appraisal thereof."

All the children named in the will survived him and were over 21 years of age. The plaintiff was a daughter of Charlotte Maria Stryker, born July 19, 1854. David Stryker was a son of Charlotte Maria Stryker, and was born May 7, 1859. At the time of the death of the testator Charlotte Maria Stryker had the following children then living: Elizabeth Maria, John W., Daniel P., George Amos, Rufus B., Wilson H., Sarah M., and Ira J. Stryker.

[1] One branch of this case hinges upon the meaning of the word "heirs" in item 6 of the will and upon the question as to whether or not the real estate devised in that item vested in the heirs of Charlotte upon the death of the testator, or whether it vested after the termination of Charlotte's life estate. Charlotte Maria Stryker died on April 21, 1904, and the appellants comprise or represent her heirs at law. The learned court at Special Term has found that the word "heirs" in item 6 must be held to mean the children, and it seems to me that he is clearly right in this holding. Under the decisions, of which there are many, it is clear that a person can have no heirs until a person dies, and, where this word is used, the will as a whole must be considered in order to arrive at the meaning intended, and it seems to me that the testator very clearly referred to the children of Charlotte Maria Stryker which she then had or might thereafter have.

[2] As to the question of vesting, the court below also holds that the remainder in the real estate vested immediately upon the death of the testator, and, while a considerable portion of the briefs is devoted to a discussion of this question, it seems to me that there can be no doubt of the correctness of the court's decision. The cases on this point are very numerous, but, as I read them, the courts have always held that, where there are words of present gift with an intervening life estate, the remainder vests immediately; its enjoyment only being postponed until the termination of the life estate. The appellants rely upon a line of cases in which the testator has used a somewhat different expression mainly to the effect that he gives a life estate to some person, and after the death of that person he gives the remainder to certain others. In such cases it has been held that, as there are no words of present gift, the estate does not

vest until the death of the life tenant, but in this case the testator specifically gives one-eighth to the heirs of Charlotte Maria Stryker, saying, however, that the rents and profits shall be appropriated to the use of his daughter during her natural life.

[3] After disposing of these two questions, however, there remains the question as to the validity of certain partition proceedings affecting the real property in question, because concededly, if such court proceedings are regular, the plaintiff and the other appellants had no interest in the property in question at the time of the beginning of the action, and had not had for many years prior thereto. There is a maze of facts bearing on this proposition, and I will endeavor to outline them briefly.

As before stated, the testator died seised of upwards of 4,000 acres of land in New York and Pennsylvania, which had a value of about $124,000 at the time of his death. By item 5 of his will he divides all this real estate into eight parts, and by item 5 he gives seven of such equal undivided eighths to seven of his children. The other undivided one-eighth is disposed of by item 6. It also appears that prior to his death the testator had placed each of his children in possession of certain lands, and had permitted them to use and improve the same, and in his will (item 8) he directs that, as far as possible upon any division of his lands, the lands then occupied by his children shall be allotted to them. He named four executors in his will, only two of whom qualified, namely, Henry Wombough and George Farnham. In October, 1853, an action was commenced in the Supreme Court of Steuben county wherein Henry Wombough, George Farnham, and Julia J. Farnham, his wife, were plaintiffs, in which all the other children named in item 5, together with their respective husbands and wives, were made defendants, as were also Charlotte Maria Stryker and her husband and seven of their children; one of the children, Ira J. Stryker, an infant of 20 months, having died intestate on September 28, 1853, shortly before the commencement of this Supreme Court action. And it will be noticed that the two remaining children of Charlotte M. Stryker and Peter Stryker, namely, Charlotte and David, had not yet been born. So that it would appear that all the parties interested under the will in the lands of the deceased were named as parties.

It is claimed by the appellants that this action was in many respects irregularly conducted, and that no final judgment was ever entered in it, and that, therefore, it has no binding force or effect upon the plaintiff and the other appellants. Concededly the judgment roll in this action, if it ever existed, cannot now be found. The court below has found that the judgment roll and a final judgment did at one time exist, but, owing to various changes and removals in the Steuben county clerk's office, it has been lost or destroyed. It does appear, however, that the summons and complaint were duly served upon all the defendants, the only question being as to the service upon the Strykers who were then living in Pennsylvania on the lands owned by the testator at the time of his death. But an affidavit alleging such nonresidence is produced, and presumably was used to

obtain an order for service in due form upon the nonresidents. On November 17, 1853, on the petition of Henry Wombough, one of the plaintiffs, Cephus F. Platt, an attorney, was appointed special guardian of the infant children of Charlotte M. Stryker by an order of the Supreme Court made at Bath, N. Y., and said attorney thereafter appeared for the said infant defendants in that action. On January 16, 1854, an order of reference was made in the action appointing John W. Dininny, an attorney, as referee to determine the facts alleged in the complaint and to report to the court. On January 17, 1854, the said referee executed the reference in pursuance of the order, and made and filed his report therein on January 18, 1854, by which report the appearance of counsel for the several parties was noted, and that he heard the case and took proof of the facts, and made his report accordingly. The complaint in that action alleged and the referee found by his report that William Wombough was seised of all the lands mentioned in the complaint at the time of his death, and that he devised said real estate to Henry Wombough, Julia Farnham, Pamelia Baldwin, Ann E. Bennett, Sarah L. Murdock, Martha M. Brewster, and Addison Wombough, who were each seised of an estate of inheritance of the undivided one-eighth part of said premises, and that he devised to Charlotte M. Stryker a life estate in an equal undivided one-eighth part of said premises, and to the defendants Elizabeth M., John W., Daniel P., George, Rufus, Wilson, and Sarah Stryker each an undivided one-seventh of one-eighth of said premises, subject to the life estate of Charlotte M. Stryker, whereby said children became seised of the said premises as set forth in the complaint. On January 18, 1854, at a Special Term of the Supreme Court held in Steuben county, the report of the referee was duly confirmed, and the court fully adjudged that the parties were entitled to the respective interests in the real estate as found by the referee, and an interlocutory judgment was on that day entered and recorded, by which the report of the said referee was confirmed, and in and by said interlocutory judgment three commissioners were appointed for the purpose of making partition of the lands described in the complaint. In pursuance of said interlocutory judgment, the said commissioners executed the trust reposed in them, and did make a partition among the several persons as therein directed, and made a report thereof which was recorded in the Steuben county clerk's office in Book of Deeds No. 81 at page 492. The said report and partition was verified March 30, 1854. The commissioners appraised the whole of said premises at the sum of $124,000. The report of the said commissioners was confirmed at a Special Term of the Supreme Court held at Corning on the 6th day of November, 1854, and, while the judgment books of the Steuben county clerk's office do not show the entry of any final judgment, it does appear that all the parties went into possession of the one-eighth so set apart to each one of them, and ratified the partition. The lands mentioned in the complaint in the present action were at the time of the testator's death used as a tinshop, were in possession of Ann E. Bennett

132 N.Y.S.—56

and her husband, and were by the judgment allotted to the said Bennetts.

The testator was the owner in fee of 220 acres of land at the time of his death, situate in Brookfield, Pa., and the same was occupied by his daughter, Charlotte M. Stryker, and, in order to carry out the terms of said will, the other children of William Wombough and their husbands and wives conveyed to Charlotte M. Stryker and her children the said Pennsylvania lands by deed dated February 1, 1854, which is Exhibit 17 in this action. The said Charlotte M. Stryker at the time of the making her father's will was also in possession of lands in the town of Woodhull, N. Y., which said lands were a part of the lands so set apart to her and her children. John W. Stryker, Daniel P. Stryker, and George A. Stryker, after they became 21 years of age, sold and conveyed to their mother, Charlotte M. Stryker, all their interest in the lands formerly owned by William Wombough and particularly all their interest in the lands so partitioned and allotted to the Stryker family. On or about July 1, 1865, Charlotte M. Stryker commenced an action in the Supreme Court of Steuben county, wherein she was plaintiff and her husband, Peter Stryker, and her children, Elizabeth Stryker Burley, Sarah M. Stryker, Wilson H. Stryker, and Charlotte P. Stryker, this plaintiff, and David Stryker, were defendants, to partition and divide the one-eighth of the Wombough real estate which had been apportioned and set off by the commissioners in the Wombough partition action to the Stryker children, subject to the life estate of their mother, Charlotte M. Stryker. Peter Stryker, the father of Wilson, Sarah, Pamelia, this plaintiff, and David Stryker, was duly appointed guardian ad litem for said infant defendants, and employed one F. C. Dininny, an attorney, to protect the interest of the said infants, and said attorney appeared in the action for them and took all proper and necessary steps before the referee to protect their interests. The complaint alleged the purchase by Charlotte M. Stryker of the shares of John W., Daniel P., and George A. Stryker in said lands after they became 21 years of age, and it also set forth that, by reason of the death of Ira and Rufus Stryker and the conveyance to her by the said John W., Daniel P., and George A. Stryker, she became owner in fee of an equal undivided one-half of the lands described in the complaint, and that she had a life estate in the remaining one-half of said lands by the terms of the will of William Wombough, a copy of which was made a part of the complaint, and that the other children of Mrs. Stryker, the plaintiff, were the owners of the other half of the lands, subject to their mother's life use thereof, and the complaint also contained the usual prayer for relief in partition actions. The petition for the appointment of Peter Stryker as guardian ad litem for the infant defendants cannot be found and the original order appointing him such guardian cannot be found, and his bond as such guardian cannot be found, but such order appointing the guardian ad litem is found recorded in Book No. 9 of the Supreme Court minutes, and the order confirming the report of the commissioners appointed in said partition action cannot be found, but it is

recorded in the book of minutes of the Supreme Court June 4, 1866. The court finds as a matter of fact that such original orders were made and duly entered by the court, but that said originals have been lost or mislaid, and cannot be found.

On January 12, 1866, at a Special Term of the Supreme Court, an order of reference was duly made to J. C. Van Orsdale, Esq., counselor at law, to take proof of all the material allegations of the pleadings. Said referee duly executed the reference and made his report of the evidence, and found that Ira and Rufus Stryker died intestate and without issue, and that each of them was entitled to an undivided one-tenth of the premises described in the complaint in the Stryker partition action of 1866, and also found that John and Daniel Stryker were each the owners of an undivided one-tenth of said premises, and they each conveyed their share and interest to the plaintiff, and that George A. Stryker conveyed his one-tenth interest in said lands to the plaintiff, and he also found and reported that by the death of Ira and Rufus Stryker intestate, and by the deeds of conveyance made by Daniel, John, and George Stryker, the plaintiff became the owner in fee of an undivided one-half interest of the lands described in the complaint, and that the defendants Wilson, Sarah, Charlotte P., and David Stryker and Elizabeth Burley were each entitled to a one-tenth part of the premises described in the complaint, subject to the life estate therein of their mother, the plaintiff, and he further reported that Peter Stryker was the father of the infant defendants, and had been duly appointed their guardian ad litem. The said report of the referee was on the 10th day of April, 1866, duly confirmed by the Supreme Court, and an interlocutory judgment was entered, appointing three commissioners, directing the commissioners to divide the said lands into ten equal parts, quantity, and quality of the land considered, and they allotted to each of the defendants Elizabeth, Wilson, Sarah, Charlotte Pamelia, and David a one-tenth part of said premises subject to the life estate of their mother. The said commissioners made their report to the court on the 26th day of May, 1866. Such report was duly confirmed by the court June 4, 1866, and on the same day the said report was confirmed the final judgment was entered thereon in the Steuben county clerk's office June 11, 1866. The said commissioners set off and allotted to Charlotte P. Stryker (this plaintiff) in severalty 53 acres of land in lot No. 6, Addison, N. Y., subject to the life estate of her mother, Charlotte M. Stryker. The said commissioners for the purpose of equalizing such apportionments allotted to Wilson H. Stryker the sum of $431, payable immediately upon the death of Charlotte M. Stryker and assessed the same against the portions allotted to David Stryker, and they ascertained, equalized, and awarded to Elizabeth Burley the sum of $332 and assessed the same against the share of Charlotte P. Stryker, this plaintiff, and directed the same to be paid on the death of Charlotte M. Stryker. Each of the parties to that action, including this plaintiff, accepted the portions or parts allotted to them, respectively, by the said commissioners. On December 23, 1873, Charlotte Pamelia Stryker, this plaintiff, peti-

tioned the Supreme Court for leave to sell her lands so apportioned to her in the Stryker partition of 1866, and to have her father appointed special guardian for that purpose. All the proceedings in said infant's real estate proceedings were in every respect regular and complete, and Peter Stryker, the special guardian, was authorized and directed to sell all the estate of Charlotte P. Stryker in and to the lands so set apart to her by the partition of 1866, and did sell said premises for $1,250, receiving $200 in cash, which the special guardian retained and expended for the support and education of this plaintiff, then an infant, and took a mortgage for $1,050, the balance of said purchase price. She accepted the said mortgage so given to her for $1,050, and assigned the same to George W. Wildrick, and received her money for it. In August, 1875, this plaintiff, Charlotte P. Stryker Spicer, after becoming of age, and for the consideration of $85, executed and delivered to John W. Dininny a deed of conveyance of all the lands which had been sold by her father as special guardian in the above infant's real estate proceedings, and thereby ratified and confirmed it. No appeal was ever taken by any of the Stryker children from the orders or judgments of the courts partitioning or dividing said lands, and all such orders, deeds, and judgments are in full force. Each one of the children of Charlotte M. Stryker ratified, confirmed, and accepted the benefits of the partition heretofore referred to, and accepted the lands set off to them and for their benefit, and, after becoming of age for valuable considerations, have conveyanced the same.

There are many other details which I have not gone into, as they seem to me unimportant. The appellants, for one thing, claim that in the partition action of 1853 certain lands not described in the complaint were divided and allotted. This seems to depend on the punctuation in the complaint, and I do not think a court of equity should interfere in such a case, where the partition made has been acquiesced in for more than 50 years by all parties concerned, and also in view of the fact that it does not appear but that an amended complaint may have been served in the action.

I think it sufficiently appears that the plaintiff in this action, as well as each and every of her brothers and sisters, have received from the estate of their grandfather every dollar to which they are entitled. Many innocent parties in Steuben county have become purchasers of a part of the lands owned by the deceased at the time of his death, have made valuable improvements thereon, and should not now be held up by parties who have for more than 30 years after becoming of age acquiesced in the partition made years before. Perhaps a similar conclusion could be reached arguing along the line of estoppel and the statute of limitations, but I think the court is right in holding that the two partition actions referred to were regular and are binding on all parties.

I therefore conclude that the judgment appealed from should be affirmed, with costs.

Judgment affirmed, with costs. All concur.