## Bentley, et al. v. Consolidation Coal Company, et al.

(Decided May 15, 1925.)

### Appeal from Pike Circuit Court.

1. Wills—On Devise Over to Children of Life Tenant they Take Vested Estate in Remainder.—Where there is devise over to children of life tenant, whether it be to them as a class or whether they be named, they take a vested estate in remainder.

2. Wills—If Devise Over is to Heirs of Life Tenant, they Take Only Contingent Remainder, Defeasible by Death Before Life Tenant's Death.—If devise over is to "heirs" or "heirs of her body," or "legal heirs" of life tenant, unless it may be ascertained from instrument that those terms were used in sense of children, heirs take only contingent remainder, defeasible by their death before life tenant's death.

3. Wills—"Heirs" and "Heirs of the Body" in Devise to Widow Held to have been Used in Colloquial Sense and to Mean "Children."— Where testator did not distinquish between meaning of word "heirs" and "children," devise to widow and "after her decease" to the "heirs of. her body forever" held a devise to children who therefore took a vested remainder, as testator used words "heirs" and "heirs of the body" in colloquial sense.

4. Evidence—Common Knowledge Word "Heirs" and "Children" Used to Mean Same Thing.—The court knows as matter of common knowledge that many people use the word "heirs" and the word "children" as meaning one and the same thing.

5. Wills—Devise Held Not to Fix Time when Remainder of Estate Vested.—Where testator devised estate to widow "and after her decease to descend to heirs of her body (meaning children) forever," by use of word "after," he did not evidence intention that devise should not vest until death of life tenant and fee was not defeasible on child's death before life tenant.

ROSCOE VANOVER and O. A. STUMP for appellants.

A. J. KIRK and O'REAR, FOWLER & WALLACE for appellees.

OPINION OF THE COURT BY TURNER, COMMISSIONER— Affirming.

William Ramey was an extensive landholder in Pike county, and executed his will in 1864. He had nine children, to each of whom he devised certain tracts of land for life. To some of them he devised as many as three separate tracts, and to some of them two, and to others only one.

Except in one instance he devised the remainder interest in the several tracts either to the "heirs," the "legal heirs," or the "heirs of the body" of the particular devisee for life. To his son, Moses, he devised three separate tracts of land, and one of them is devised to him for life "and after his decease to descend to his children forever," although in devising the other two tracts of land to Moses for life the devise in remainder was to his "legal heirs" forever.

He devised to his daughter, Rebecca Bentley, two separate tracts of land, and in disposing of the remainder interests provided as to each of the tracts that same should "after her decease descend to the heirs of her body forever."

Rebecca Bentley had six children, all living at the time the will was written, but three of them died before the life tenant, their mother, and had during her lifetime conveyed their several interests in the two tracts of land, and this is the title under which appellees hold and claim.

The plaintiffs (appellants) are the descendants of the three children of Rebecca Bentley who died before she did, and who had theretofore during the lifetime of Rebecca conveyed their interests.

The petition alleges that under the will of William Ramey the children of Rebecca Bentley took no such estate in remainder as they could pass to their vendees during the existence of the life estate, and that consequently such vendees took nothing under such conveyance, and the plaintiffs were, therefore, the owners of one-half undivided interest in the two tracts of land so devised to Rebecca Bentley for life; that is, that the descendents of each of the three children of Rebecca Bentley that died before she did took a one-sixth undivided interest in each of the tracts.

Appellees were holding and claiming under the deeds made by Rebecca Bentley's three children during her lifetime, and in the first and second paragraphs of the answer, while admitting the language of the devise to Rebecca Bentley, averred that the testator used the language indicated in disposing of the remainder interest in the sense of "children," and that when he said the "heirs of her body" he meant children of Rebecca Bentley; and that the instrument as a whole discloses the use of the words in that sense, and giving the instrument that interpretation Rebecca Bentley's children took under the will a vested remainder upon the death of the testator, and consequently could and did pass title thereto during the existence of the life estate.

There were other defenses in separate paragraphs that are not here involved, but the plaintiffs filed a demurrer to the first and second paragraphs of the answer, and that demurrer brought in question the correct determination of what estate the remaindermen took under William Ramey's will.

The chancellor overruled the demurrer to the two paragraphs, thereby in effect holding that the remaindermen under that clause of William Ramey's will took a vested estate upon the testator's death, and that, therefore, their conveyances made during the life of Rebecca Bentley passed title to their remainder interests in the lands. This being conclusive of the whole controversy the other defenses interposed in the answer were not considered, and the plaintiffs declining to plead further their petition was dismissed, and this appeal by them follows.

The questions raised and discussed are, (1) whether the remaindermen took a vested estate or only a contingent estate dependent upon their outliving the life tenant; and (2) whether if they did take a vested estate it was only a defeasible fee which was subject to be defeated by the death of the remaindermen during the existence of the life estate.

There was in the Ramey will no provision as to survivorship among the members of the class of remaindermen, nor was there any attempt toward a devise over to any one in the event any of the remaindermen should die before the expiration of the life estate.

But there is merely an express devise of a life estate to the parent, with remainder to the heirs of her body forever.

The rule in this state is that where there is a devise over to the children of the life tenant, whether it be to them as a class, or whether they be named, they take a vested estate in remainder; but if the devise over is to the "heirs," or the "heirs of her body," or "legal heirs," unless it may be ascertained from the instrument that those terms are used in the sense of children, the heirs take only a contingent remainder which may be defeated by their death before the death of the life tenant. Jones v. Thomasson, 159 Ky. 196; Kendrick v. Scott, 200 Ky. 202.

This ruling is based upon the reason that the word, "heirs" is necessarily a word of purchase because it cannot be ascertained who the heirs of any individual are until his death; while "children" is a word of limitation and refers to a class of individuals who may be readily ascertained during the life of the first taker, and may take an interest which vests during the life tenant's holding even though its enjoyment is postponed, and

which therefore may descend or be sold during the existence of the life estate.

Our first task then is to ascertain from the instrument in question whether the testator in using the words "heirs of her body" meant them in their legal sense which would necessarily convey to them only a contingent interest in remainder, or whether from the instrument as a whole it is apparent that he used those words in the sense of, and as meaning children. In the first place the will, while comprehensive in its provisions, evidences on its face a lack of accurate power of expression in the draftsman; it likewise discloses not only a want of education according to modern standards, but a faulty conception of the accurate use of words and language. For instance in the body of the instrument the testator refers to "my administrator hereinafter named," but when he comes in the last clause to name his executor he properly refers to him as executor, thereby unmistakably showing that he used the words interchangeably, and meant the same in each instance. Likewise in the twenty or more devises in remainder he uses at least four expressions in all of which clearly he intended to mean one and the same thing; in some of the devises, as recited, the devise in remainder is to the "heirs of the body" of the life tenant, in some of them to the "legal heirs" of the life tenant, and in some of them to the "heirs" of the life tenant, and in one to the "children" of the life tenant. We know as a matter of common knowledge that many people use the word "heirs" and the word "children" as meaning one and the same thing, and the instrument in question cannot be studied or analyzed without reaching the conclusion that the testator used each of these terms interchangeably, and in each and all of them meant the children of the particular devisee for life.

The testator himself in the very first clause of his will shows how he used those words; for there, after providing for the sale of his personal property and the payment of his debts and funeral expenses, he further provides that if the personal property be insufficient for those purposes "my administrator hereinafter named may sell some of my surface (probably meaning surplus) land that is not divided among my several heirs." He then proceeds in some twenty or more instances to devise the land which he thus says he has divided among his "heirs," to his children for life, thereby clearly showing

that he used the words "heirs" and "children" interchangeably, and meant the same in the use of each word.

It is reasonably sure, therefore, that the testator did not distinguish in drawing his will between the meaning of the words "heirs" and "children," and that in each instance he meant children where he used these expressions, and used the words, "heirs" and "heirs of the body" in their popular or colloquial sense, and not in their legal or technical meaning. That being true it must be held under a long line of decisions in this state that the devise to the "heirs of her body" was to the "children" of Rebecca Bentley, and that as such they took a vested remainder. Tucker v. Tucker, 78 Ky. 503; Eggner v. Hovekamp, et al., 134 Ky. 228; Brown v. Ferrell, 83 Ky. 417; Mefford v. Daugherty, 89 Ky. 58; Jones v. Carlin, 96 S. W. 885; Mitchell v. Simpson, 88 Ky. 125; Clubb v. King, 99 S. W. 935; Ft. Jefferson Improvement Co. v. Dupoyster, 108 Ky. 792; Howell v. Ackerman, 89 Ky. 22; Feltman v. Butts, 8 Bush 120; American National Bank v. Madison, 144 Ky. 152; Hunt v. Hunt, 154 Ky. 679; Duncan v. Medley, 160 Ky. 684; Blue v. Travis, 152 Ky. 700; Cook v. Hart, 135 Ky. 650; Tanner v. Ellis, 127 S. W. 995; Ratcliff v. Ratcliff, et al., 182 Ky. 230; Turner v. Johnson, Ex., 160 Ky. 612; Cecil v. Cecil, 161 Ky. 49.

But it is argued for appellants that even if the word "children" be substituted in these devises for the word "heirs," it would still be only a defeasible fee which would be defeated by the dying of the remaindermen during the existence of the life estate, and the cases of Roy v. West, 194 Ky. 96, and Gatto v. Gatto, 198 Ky. 569, are relied upon as supporting this view. But those cases are clearly distinguishable from this; in Roy v. West the devise was to Emma R. Cosby with the provision that if she should die without issue the devise over was to the child or children of Lillie Roy, and the court held that even if the devise might be deemed a vested one it was only a defeasible fee in any event, and that a purchaser from one of the remaindermen during the life of Emma Cosby, the life tenant, took no title except such as the vendor had, and the vendor having died before the death of Emma Cosby his vendee took nothing. Clearly in that case the title had not absolutely vested under the terms of the instrument until the death of Emma Cosby, for it was provided the same should be held until the youngest child arrived at the age of twenty-

one years or married, "and then it shall be divided among said children as it would descend under the laws of Kentucky." Clearly that was a provision for survivorship among the children of Lillie Roy, while in this case we have no such provision, but only a devise in remainder to the children of Rebecca Bentley.

In the Gatto case the devise was to the wife for life, and at her death to the children, with a further provision that if any child should die before the life tenant leaving issue his share should go to such issue. That was clearly a defeasible fee, and it was held that upon the death of one of the children during the life of the first taker and without issue, he had no such estate as might pass under his will, for the defeasance provided for in the instrument had taken place, and it was the clear purpose of the testator that that part of his estate devised to any child who might die before the expiration of the particular estate without issue should go to the other children. And so in each of the cases relied upon there was either express provision for survivorship as among the class, or a devise over, whereas in this case there is none.

But appellant's counsel lay stress upon the language of the devise in remainder, and insist that the testator himself by that language fixed the time when the remainder estate devised should vest, when he said, "and after her decease to descend to the heirs of her body forever." The argument is that the use by him of the word "after" evidenced his intention that the devise should not vest until after the death of the life tenant. But we cannot assent to this view, for no distinction can be drawn between the use of the words "after," "at" or "upon" in that connection, for manifestly they all have reference to one and the same period of time, and that is the death of the life tenant.

Our conclusion, therefore, is not only that the testator used the words "heirs of her body" as synonymous with and meaning "children," but that in the absence of something in the instrument showing a contrary purpose, the vested devise in remainder took effect upon the death of the testator.

Judgment affirmed.

Whole court sitting.