EVERITT *v.* LASPEYRE.

No. 14396. FEBRUARY 9, 1943.

*Arthur L. Purvis,* for plaintiff in error.

*Aaron Kravitch, Charles E. Donnelly,* and *Dennis Pierce,* contra.

GRICE, Justice. Whenever a question arises as to the proper construction to be given to a clause in a will, the thing to be determined is, what did the testator intend? The problem is not usually aided by a study in etymology, nor is it always safe to turn the inquiry into a quest to discover the precise meaning of a word according to scholarly standards, or to ascertain what would be accepted by accomplished grammarians as the correct parsing of a sentence. Courts should not neglect to drink deep at the Pierian spring when aid from such a source may be had; but applying the

cardinal rule in such cases, in order to reach the desired end, our Code declares that the court may transpose sentences or clauses, and change connecting conjunctives. § 113-806. Wills are made by the unlettered as well as the learned; and it is well to remember that after all, whether it be selected by the scrivener or the testator himself, "A word is not a crystal, transparent and unchanged. It is the skin of a living thought, and may vary greatly in color and content according to the circumstances and the time in which it is used." Towne v. Eisner, 245 U. S. 418, 425 (38 Sup. Ct. 158, 62 L. ed. 372, L. R. A. 1918D, 254).

1. Is the defendant in error the child of Mrs. Grimm, the life-tenant, so as to share in the remainder, which under item one of the will was devised to his daughter, Mrs. Grimm, for life, but which contained a further provision that if she left surviving her any child or children, then the same should go to her heirs or to such child or children that may be living at the time of her death? The plaintiff in error is a child born to Mrs. Grimm during a former marriage. The defendant in error was adopted by Mrs. Grimm on February 7, 1912, nearly seven years after this will was made, the testator dying on April 24, 1905. The instant case, as to this particular question, can not be distinguished on principle from the recent case of Comer v. Comer, 195 Ga. 79 (23 S. E. 2d, 420), where it was ruled, there being nothing in the will to the contrary, that it is presumed that the testator intended that the property should go according to the law of natural descent, and not according to some artificial relation created by law; and that where the adoption did not take place until after the testator's death, it would be unreasonable to say that he had any such adopted child in mind at the time of making his will, and that it would require a clear addition to that instrument to include such adopted child as one of the objects of his bounty. A comparison of the facts in that case with those in the record before us, and an examination of the authorities therein cited, and the discussion there had, together with the application of the principles there relied on, would seem to render unnecessary any further citation of authority for our ruling here, that the defendant in error was not such child of Mrs. Grimm as was intended to be included within the term "child or children," as used in that provision of the will here involved.

2. Was the defendant in error an heir of Mrs. Grimm, so as to come within that clause which devises the remainder interest "to her [Mrs. Grimm's] heirs or to such child or children that may be living at the time of her death"? This question must be answered in the negative. In *Baxter* v. *Winn,* 87 *Ga.* 239 (13 S. E. 634), this court had before it the will of John Morrow, which in substance provided that certain property was given in trust for the benefit of Moriah Morrow and Warren Henry Morrow, and also contained this provision: "that in the event Moriah or Warren Henry should either die, leaving no heirs," the survivor should have the whole interest arising under the will, and the testator directed that on the death of the survivor, he or she might will it to whom he or she pleased, but that during the lives of Moriah and Warren Henry they were never to have or dispose of any part of the land, stock or railroad stock, outside of the rents and interest.

Wiley H. Baxter, the husband and heir at law of Moriah Morrow (who died intestate, leaving no child), petitioned to recover her share of the property. On demurrer his petition was dismissed. The headnote in the case is as follows: "The cardinal rule in the construction of wills is to ascertain the intention of the testator. The court below rightly held that the word 'heirs,' as used in the will construed in this case, meant 'children.'" In the opinion after a statement of the facts, the court contented itself with this pronouncement: "We think it obvious, without discussion, that the court below rightly construed this will as stated in the headnote." See *Milner* v. *Gay,* 145 *Ga.* 858 (90 S. E. 65), where this court construed a clause, in a deed to A "for and during his natural life, and at his death to be equally divided between the heirs at law of" A, to create "a life-estate in A, with remainder to his children." While the court in that case was construing a provision in a deed, nevertheless in *Lumpkin* v. *Patterson,* 170 *Ga.* 94 (152 S. E. 448), holding that the word "legal heirs," as used in item 6 of the will there under consideration, meant "children," it cited and relied on for its ruling *Milner* v. *Gay,* supra. Further sustaining this view was *Brown* v. *Lane,* 147 *Ga.* 1 (92 S. E. 517), where the word "heir" in a will was held to mean lineal heir or child, in a clause which read: "Should either of my children die after receiving their portion of my estate, and leave no heir, in that case the property

received from my estate must be returned to be divided between my other children." See *Beasley* v. *Calhoun,* 178 *Ga.* 613 (173 S. E. 849).

While, on this as on many other questions, there may be found two lines of authority, it is believed that the weight of authority is to the effect that generally the terms "heirs" and "children" in popular sense have the same significance. See Strickland *v.* Delta Inv. Co., 163 Miss. 772 (137 So. 734, 736) ; Bentley *v.* Consolidated Coal Co., 209 Ky. 63 (272 S. W. 48) ; Spicer *v.* Connor, 148 App. Div. 334 (132 N. Y. Supp. 877, 879) ; Lee *v.* Roberson, 297 Ill. 321 (130 N. E. 774) ; McComb *v.* Morford, 208 Ill. App. 1; Durfee *v.* MacNeill, 58 Ohio St. 238 (50 N. E. 721, 722), and the other cases listed in 7 Words and Phrases, 5 et seq. We recognize in this State the law to be that unless there is something in the will to the contrary, there is a presumption that the testator intended that his property should go according to the law of natural descent. See *Allen* v. *Durham,* 173 *Ga.* 811 (161 S. E. 608), and the other authorities cited in *Comer* v. *Comer,* supra.

Our law declares that in order to possess testamentary capacity, the testator must be capable of bringing in mental review his family relations, and of comprehending the claims and obligations naturally suggested by such review. *Ragan* v. *Ragan,* 33 *Ga. Supp.* 106, 108. This would seem to mean that a normal person in possession of his mental faculties would, in his will, have his mind primarily on those of his family. It is almost a universal wish of the human heart, and frequently the dearest, that those who are bone of our bone and flesh of our flesh shall, after we pass on, live happily. To that end, that they may be surrounded with such comforts and advantages as a parent can bestow upon them, many provisions are made for them, testamentary and otherwise. The Apostle Paul wrote to Timothy: "But if any provide not for his own, and specially for those of his own house, he hath denied the faith, and is worse than an infidel." 1 Tim. 5, 8. The law recognizes this natural instinct as a call from blood to blood. Hence the rule that the presumption is that a testator intended, unless there be clear language to the contrary, that his property should go to those bound to him by ties of consanguinity. Not only is it true, as was said by Chief Justice Lochrane in *Johnson* v. *Kelly,* 44 *Ga.* 485, 488, that "The law, in the long run, trusts to blood,"

but also that the law does not shut its eyes to the fact that since men are presumed to act naturally, a person is ordinarily moved by the ties of blood in making provision in a will for those who shall thereafter enjoy his bounty, and that he has in mind only those who are his own descendants, even though the favored class in remainder be designated by a word which under some circumstances would include those who are not within the blood lines.

The authorities heretofore cited but confirm and give judicial approval to the ancient proverb immortalized by Flag-officer Tattnall, of Georgia, in Chinese waters in the year 1859, when in bringing the gunboats of the United States to the rescue of the distressed British, he uttered the memorable words, "Blood is thicker than water." Jones' Life of Tattnall, 87.

The word "heirs" in the will is construed to mean "children." It is argued, however, that a different result is required by reason of the word "or" after the word "heirs" in the phrase from the will last above quoted, to wit, "to her heirs or to such child or children," etc. The argument is arresting, but not convincing. The word may even in some cases be construed to mean "and." *Clay* v. *Central Railroad & Banking Co.*, 84 *Ga.* 345 (10 S. E. 967), and other authorities cited in 30 Words and Phrases, 39. The word, according to the New Merriam-Webster Dictionary, is sometimes used, not to mark an alternative, but to indicate an explanation, as in the phrase, "this is a sphere or globe." To same effect, see Menominee River Boom Co. *v.* Augustus Spies Lumber Co., 147 Wis. 559 (132 N. W. 1118); Peck *v.* Board of Directors, 137 La. 334 (68 So. 629); Grenada Bank *v.* Petty, 174 Miss. 415 (164 So. 316); Choctaw &c. Ry. Co. *v.* McLaughlin, 43 Tex. Civ. App. 523 (96 S. W. 1091); Board of Trustees of Park College *v.* Attorney-General, 228 Mo. 514 (129 S. W. 27); H. & B. American Mach. Co. *v.* U. S., 11 Fed. Supp. 48. Our investigation of the authorities bears out the statement made in the case last cited, that, "The books are full of familiar instances in which the word 'or' appearing in wills, deeds, contracts, statutes, insurance policies, etc., is held not to have been used in its ordinary disjunctive signification." The word is frequently used to connect two others expressing the same idea. State *v.* Studebaker, 334 Mo. 471 (66 S. W. 2d, 877). When so used, the word "or," in a grammatical sense, is equivalent to "being." People *v.* Third National Bank of Syracuse, 159 N. Y. 382 (54 N. E. 35).

In the will here involved, we are of the opinion that the use of the word "or" in the clause under discussion was the same as if instead of that word the testator had said "being," or "to wit," or "that is to say."

It is unnecessary to decide another point argued in the briefs; that is, whether this record shows an annulment of the adoption. For, assuming that the adoption continued, it did not give to the adopted child the right which she claims under this will.

The court erred in directing the verdict, and in refusing a new trial.         *Judgment reversed. All the Justices concur.*